Clyde and Edith D. GUTHRIE, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Charles S. GUTHRIE, Executor, etc.,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

Cecil and Hazel GUTHRIE, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

C. S. and Ruth GUTHRIE, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Hobson and Crystal M. GUTHRIE,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Paul F. GUTHRIE, Jr., TRUST, etc.,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

Virginia Ann GUTHRIE TRUST, etc.,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. Nos. 3918–3924.

United States District Court
W. D. Kentucky,
at Louisville.

Feb. 6, 1962.

Chas. I. Dawson, Robert S. Dorsey, Bullitt, Dawson & Tarrant, Louisville, Ky., for plaintiffs.

Wm. E. Scent, U. S. Atty., Louisville, Ky., and Herbert L. Awe, Department of Justice, Washington, D. C., for defendant.

SHELBOURNE, District Judge.

The plaintiffs in each of the seven above-styled cases were partners, or the personal representatives of partners in the Harlan Fuel Company, a partnership engaged in mining, processing and selling coal at Yancey in Harlan County, Kentucky. The actions were brought for the recovery of additional taxes and interest paid by plaintiffs under deficiency assessments for the fiscal years 1953, 1954, and 1955, and arise out of Title 26 United States Code.

By an agreed order entered herein December 14, 1960, the actions were consolidated under the provisions of Rule 42(a), Federal Rules of Civil Procedure, 28 U.S. C., and tried before the Court without a jury on June 1, 1961. The case was briefed by counsel and submitted to the Court on October 25, 1961.

This case involves provisions of the Internal Revenue Code of 1939 and Internal Revenue Code of 1954. The 1939 Code is applicable for the fiscal years 1953 and 1954 and the 1954 Code is applicable for

the fiscal year 1955, but there is no substantial difference in the provisions of the respective Codes in the portions applicable to this case. Both the 1939 and 1954 Codes allow 10 per cent as a depletion allowance on coal. Section 23(m) of the 1939 Code, 26 U.S.C. § 23(m) provides that in computing net incomes for mines, oil and gas wells, natural deposits, and timber a reasonable allowance for depletion and depreciation of improvements shall be allowed according to the peculiar conditions in each case, and Section 114(b) (4) (A), 26 U.S.C. § 114(b) (4) (A) provides that the allowance for depletion under Section 23(m) in the case of coal mines shall be 10 per cent of the "gross income from property" during the taxable year.

"Gross income from property" is defined by Section 114(b) (4) (B), and by Section 613(c) of the 1954 Code, 26 U.S.C. § 613(c), as:

"As used in this paragraph the term 'gross income from the property' means the gross income from mining. The term 'mining' as used herein shall be considered to include not merely the extraction of the ores or minerals from the ground but also the ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products, and so much of the transportation of ores or minerals (whether or not by common carrier) from the point of extraction from the ground to the plants or mills in which the ordinary treatment processes are applied thereto as is not in excess of 50 miles unless the Secretary finds that the physical and other requirements are such that the ore or mineral must be transported a greater distance to such plants or mills. The term 'ordinary treatment processes' as used herein, shall include the following: (i) In the case of coal—cleaning, breaking, sizing, and loading for shipment; * * *."

The basic question to be determined here is whether the partnership, during the fiscal years 1953, 1954, and 1955, was entitled to treat portions of insurance proceeds paid as the result of two fires at its mine as gross income from property subject to the depletion allowance permitted by the Revenue Codes of 1939 and 1954.

The parties filed a written stipulation of facts, and at the trial plaintiffs introduced Charles S. Guthrie, managing partner of the partnership, and Joe B. Sims, office manager and bookkeeper. The Court considers the facts hereinafter found the only ones bearing upon any dispute between the plaintiffs and defendant. From the stipulation and the testimony heard, the Court makes the following

## FINDINGS OF FACT

1. The Harlan Fuel Company, a partnership engaged in mining, processing, and selling coal, located at Yancey in Harlan County, Kentucky, filed its income tax returns on the fiscal year basis, its fiscal period being from October 1 through September 30 for the years here involved.

2. During the fiscal years 1953, 1954, and 1955, there were in force various policies of insurance, commonly known as business interruption insurance, issued in favor of the company. The provisions of all of the policies here involved were the same and, in substance, were as follows:

"2. If the building(s), structure(s), machinery equipment or merchandise on the premises described (for stock see Sections 7, 8, 9 and 10 of this form) be damaged or destroyed by the peril(s) insured against during the term of this policy and a necessary interruption of business directly results, this Company shall be liable for not exceeding the ACTUAL LOSS SUSTAINED by the insured, for only such length of time as would be required with the exercise of due diligence and dispatch, to rebuild, repair or replace such described property as has been damaged or destroyed, commencing

with the date of such damage or destruction and not limited by the date of expiration of this policy, to-wit:—

"Item I. $————On the net profit which is thereby prevented from being earned and such charges and other expenses, including payroll expenses of Group I employees but excluding payroll expense of Group II employees, as must necessarily continue during the interruption of business, to the extent only that such charges and expenses would have been earned had no loss occurred. This item covers expense of necessary heat, light and power, the cost of which is prevented from being earned during the interruption of business. Definition of Group I employees: Officers, executives, department managers, employees under contract and other important employees.

\*   \*   \*   \*   \*   \*

"4. Experience of the Business: In determining the amount of net profit, charges and expenses covered under Item I or Item II, whether for the purpose of ascertaining the amount of loss sustained or for the application of the Contribution Clause, due consideration shall be given to the experience of the business before the date of damage or destruction and the probable experience thereafter had no loss occurred."

By a resumption of operations clause, it is a condition of the insurance that if the insured, by resumption of complete or partial operation of the property described, could reduce the loss resulting from the interruption of business, such reduction shall be taken into account in arriving at the amount of loss under the policy.

3. On January 7, 1953, a fire occurred at the company's mine which destroyed the tipple, the screening facilities consisting of shakers and vibrators, and a portion of the conveyor system. This equipment provided the process and treatment by which the company obtained 27 different grades of commercially marketable coal. The mine was idle for nine days following the fire, then the company began construction of a temporary tipple. Approximately a month later it resumed processing and selling coal. However, it was able to process and market only five grades of coal.

In the 12 months' period preceding January 7, 1953, the company mined and processed 274,000 tons of coal which it sold for an aggregate of $1,561,409.00. In the 12 months' period immediately following January 7, 1953, the company mined and processed 288,500 tons of coal for which it received a total of $1,496,-415.00.

4. Under the provisions of its business interruption policies, the company was paid $225,969.29 in settlement of its claims arising from the January, 1953 fire, of which $78,932.83 represented non-production expenditures. The remainder of $147,036.46 was treated as income subject to depletion, $115,000.00 was allocated to the fiscal year 1953 and $32,036.46 to the fiscal year 1954, and reported as such on the partnership's income tax returns for the respective years.

5. A second fire occurred at the mine September 4, 1954, destroying the tipple, vibrator screens, and the conveyors at the tipple, as well as the conveyors leading from the mouth of the mine to the tipple. It was necessary to shut down the mine and there was no activity for 28 days following the fire while the company was restoring the tipple facilities substantially as they were prior to the second fire.

In the 12 months' period preceding September 4, 1954, the company mined, processed, and sold 191,800 tons of coal for $1,104,949.00, and in the 12 months' period following that date it mined, processed, and sold 183,800 tons for a total amount of $970,148.00.

6. Under the provisions of its business interruption policies, the company was paid $175,728.36 in settlement of its

claims arising from the September, 1954 fire, of which $42,311.53 represented non-production expenditures. The remaining amount of $133,416.83 was treated as income subject to depletion, $40,000.00 was allocated to the fiscal year 1954 and $93,-416.83 to the fiscal year 1955, and reported as such on the partnership's income tax returns for the respective years.

7. The total sum received by the company on its claims resulting from the two fires was $401,697.65. The amount of $121,244.36 was considered as representing non-production expenditures. The remaining $280,453.29 was treated as income subject to depletion, $115,-000.00 was allocated to the fiscal year 1953, $72,036.46 to the fiscal year 1954, and $93,416.83 to the fiscal year 1955, and was reported as such on the income tax returns of the partnership for the respective years.

8. The amount paid in settlement of each of the company's claims under its business interruption insurance was arrived at by the partnership and the adjusters for the insurance companies "by giving due consideration to the experience of the business before the loss and the probable experience thereafter had no such loss occurred."

In the year preceding the first fire, the company made a profit of $160,000.00; in the year following, it made a profit of $41,000.00. In the year preceding the second fire, the company made a profit of $32,600.00; in the year following, it sustained a loss of $100,800.00.

9. The Commissioner of Internal Revenue determined that the partnership's treatment of portions of its insurance recovery as gross income from property and subject to depletion was improper, and determined that the income of the partnership should be increased for its fiscal years 1953, 1954, and 1955.

As a result of these increases in the partnership's net income, the partners' distributable shares in the partnership became liable for their respective interests in the aggregate assessment, and the partners paid assessments totalling $34,-270.64 with interest in the amount of $7,954.69.

10. Appropriate claims for refund of the amounts assessed and paid, together with interest, were filed by each of the partners for the specific amount paid by him. The claims for refund were disallowed by the Commissioner and these separate suits were filed.

## CONCLUSIONS OF LAW

Jurisdiction of this action is conferred upon this Court by the provisions of Section 1346(a) (1), Title 28 United States Code.

Plaintiffs claim that portions of the business interruption insurance proceeds paid to the partnership were properly treated as gross income from property. Under the terms of that insurance, the company was required to resume its operation of mining and processing coal. Plaintiffs contend that in so doing the company sustained a loss attributable to its inability to market its coal so as to receive the income it would have received but for the destruction of its tipple and processing equipment. Their claim is supported by the fact that in the 12 months' period following the January, 1953 fire the company mined and sold 288,500 tons of coal for $64,994.00 less than it received for 274,000 tons of coal during the 12 months' period preceding that fire. Furthermore, it marketed substantially the same tonnage of coal during the 12 months' period preceding and the 12 months' period following the fire in September, 1954, but received $134,-801.00 less for its coal. Upon these facts, plaintiffs bottom their contention that the taxable income they received from the business interruption insurance was gross income from property as defined in Section 114(b) (4) (B) of the 1939 Revenue Code and Section 613(c) of the 1954 Revenue Code.

It will be noted that plaintiffs do not claim the aggregate amount of insurance recovered under its business interruption policies as income subject to depletion, but there was allocated from

each of such recoveries a substantial portion representing payment of certain non-production items not properly subject to the depletion deduction.

In support of the Commissioner's assessments against the individual partners, the defendant contends that the measurement of "gross income from the property" is only that amount which is received from the sale of the property and does not embrace insurance proceeds which guarantee a "net profit." It contends that the company's receipts from the actual sales of its coal during the fiscal years 1953, 1954, and 1955 represent the amount upon which the depletion percentage is to be calculated for those years.

The defendant's contention omits from consideration the additional price per ton which the company received for the 22 grades of coal it produced and marketed prior to the first fire on January 7, 1953, but was unable to process and sell thereafter by reason of the destruction of its tipple facilities.

The case of Shakertown Corporation v. Commissioner, (CA 6) 277 F.2d 625, involved the proper treatment for income tax purposes of proceeds from business interruption insurance. Judge Miller's opinion clearly set forth the distinction between policies insuring loss of profits and policies insuring loss of use and occupancy. This Court has concluded that the holding in that case is not applicable to the Commissioner's contention here.

The defendant relies upon the case of Helvering v. Mountain Producers Corp., 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907, which involved the amount of gross income from property for the purpose of statutory allowance for depletion in the case of oil and gas wells. The taxpayer had an agreement with a refining company by which the refining company was to defray the costs of production. The Supreme Court held that the taxpayer's "gross income from the property" included the total cash payments received for the sale of the oil but that, for depletion purposes, the taxpayer could not add to that figure the cost of production which it had not itself paid. At page 381

of its opinion, at page 625 of 58 S.Ct., the Supreme Court said:

"* * * the owner of oil in place, instead of preparing it for delivery and sale, may prefer to lessen his work, lower his price and thus decrease his gross income from the property, and in such case the services which the buyer may perform are not to be regarded as part of that income."

The case at bar is distinguishable from the Producers Corporation case in that the company here performed all operations in mining and processing its coal for sale and delivery. Due to the destruction of equipment used in processing its coal for market, after the first fire it was limited to producing only five grades of coal rather than the 27 grades it had previously marketed, which materially reduced the price that it received for the aggregate of its coal sold. Protection against such loss of profits was provided by the company's business interruption insurance, and the proceeds from its claims under that insurance cannot be considered as payment of its production costs by another.

The reasoning in Burt et ux. v. United States, 170 F.Supp. 953, 145 Ct.Cl. 282, appears to be an answer to the Commissioner's claim in the case at bar. In the Burt case the Court of Claims determined that realty taxes paid by another under a contract constituted gross income subject to a depletion allowance to the owner of the real estate, including the mineral. This holding was approved by the Tax Court of the United States in the similar case of Higgins v. Commissioner, 33 T.C. 161.

This Court concludes that the partnership's treatment of portions of the insurance proceeds from the business interruption policies as gross income from property was proper and such proceeds were subject to a depletion allowance, as claimed by the partnership in its income tax returns for the fiscal years 1953, 1954, and 1955. Therefore, the assessments against the individual plaintiffs by the Commissioner were improper and

the plaintiffs are entitled to recover the additional amounts assessed against and paid by them with interest as allowed by law.

Plaintiffs' counsel, upon notice to defendant's counsel, will submit an appropriate judgment in accordance with the views expressed herein.