## STATE v. LESLIE H. FAWKES.[1]

July 3, 1941.

No. 32,841.

*J. A. A. Burnquist,* Attorney General, *Chester S. Wilson,* Deputy Attorney General, *George B. Sjoselius,* Special Assistant Attorney General, *Frank J. Williams,* Assistant County Attorney, and *Karl W. Windhorst,* Special Assistant County Attorney, for the State.

*Oscar Hallam,* for respondent.

[1]Reported in 299 N. W. 666.

LORING, JUSTICE.

This case comes here on appeal by the state from a judgment holding certain real estate in Minneapolis not to be subject to an *ad valorem* tax. The defendant has a 100-year lease from Edward L. Estabrook on lots 63, 64, and 65, Auditor's Subdivision 137, Hennepin county, by the terms of which defendant is to pay the real estate taxes. Defendant, in turn, has leased the entire building erected upon said premises to the Railway Express Agency, Inc., which, under our law, pays a gross earnings tax in lieu of all *ad valorem* taxes upon its property. 1 Mason Minn. St. 1927, § 2268, as amended by 3 Mason Minn. St. 1940 Supp. § 2268. The trial court held that because the building was in the exclusive use of the express company the gross earnings tax paid by it paid the taxes on this property, and that it was, while in such use, not subject to the usual *ad valorem* taxes.

The respondent concedes that there is no question before this court except that of whether the taxes have been paid by means of the gross earnings payment; that the principal question is one of legislative intent; and that the constitutional questions are merely incidental to that of statutory construction. In State v. Railway Exp. Agency, Inc. 210 Minn. 556, 299 N. W. 657, the distinction between the statute imposing a gross earnings tax upon railway companies and that imposing such a tax on express companies is carefully pointed out. In that case this court holds that the earnings of property used by the express company exclusively in a pick-up and delivery service handled for the railway companies are properly included in the gross earnings of the express company, which are the measure of the taxes imposed upon it, notwithstanding that the railway companies included the cost of this service in their charges to their customers and consequently pay a tax measured by earnings which included the charge for the express company service.

We have so frequently discussed the nature of these gross earnings taxes and the subject is so thoroughly covered in State v.

Railway Exp. Agency, Inc. *supra*, that it would be a work of supererogation again to go over that subject here. We must always bear in mind that the gross earnings tax is a tax upon property and that the earnings are merely the convenient yardstick or measure by which that property tax is determined. It is just as much a property tax as if it were assessed *ad valorem*.

Does the express company's payment of its property tax cover the defendant's property? We think it does not. As stated in State v. Railway Exp. Agency, Inc. *supra*, the express company's tax covers *its* property only. 1 Mason Minn. St. 1927, § 2268, as amended, does not in any way make the tax one upon property *operated*, as distinguished from that *owned*, by express companies. In that respect it differs from the tax imposed upon railroad companies, and the cases involving railroad taxation are not in point. The defendant still has his property in the real estate here involved, and it earns him a substantial return. The express company has only a leasehold interest in the property. If that leasehold is of any value to the express company or subject to taxation, it is included in the coverage of its gross earnings tax.

The respondent relies upon the case of Hopkins v. Southern Cal. Tel. Co. 275 U. S. 393, 48 S. Ct. 180, 72 L. ed. 329, where the Supreme Court adopted a construction of the California statute which did not permit the *ad valorem* taxation of telephone instruments leased by the American Telephone & Telegraph Company to the California company. It did so because, in a previous case, the California court had held such property subject to the *ad valorem* tax, but had granted a rehearing, leaving the construction of their statute at large. There is no report of any further California decision in the case. The Supreme Court concluded its opinion with the statement [275 U. S. 403, 48 S. Ct. 183]: "Without an authoritative holding by the State Supreme Court to the contrary, we must conclude the leased speaking sets are not subject to local taxation." Therefore the case is of no help to us here.

If the express company's property were taxed *ad valorem* on each piece, there could be no contention that it would be obliged to

pay the tax on the building here involved. The mere fact that it leases it and uses it exclusively in its business does not change the taxable status of the property, nor does the fact that its taxes are measured by its gross earnings. The corporation's tax, measured by gross earnings, covers no more property than would be covered by an *ad valorem* tax assessed against its property piece by piece. That answers the question. The legislative purpose as to the property covered by the gross earnings tax on express companies is clear. Defendant's property is liable to the *ad valorem* tax, and there is no double taxation and no unconstitutional discrimination.

There may be advantages or disadvantages incidental to ownership in fee or to the leasing of property by the express company, but they are no greater than those to which other taxpayers are subject and do not constitute constitutional objections to taxing defendant's property. Money paid for rent is an expense of operation. State v. Railway Exp. Agency, Inc. *supra*. Practical uniformity is all that is required of the legislature.

The judgment is reversed.

STONE, JUSTICE (dissenting).

It is respectfully submitted that we have here a plain case of double taxation. Therefore, in my judgment, the decision is wrong, not because of violation of any constitutional limitation, but solely because double taxation is not intended by our gross earnings tax laws.

The *ad valorem* tax on real estate, which the state seeks to collect, is not upon the reversion of the fee owner, nor upon the leasehold interest of the express company. It is upon the land as such. Operating *in rem* as it does upon the land, it operates against all the title or titles anybody could have thereto, either fee, reversion, or leasehold.

During the determinative period, the express company, as long-term lessee, was in possession and complete control of the property, which was devoted exclusively to the use of the express company in its business. For purposes of taxation, therefore, the con-

clusion seems inescapable that the premises were "its property" within the purpose of the gross earnings tax law.

It seems to beg the question to say that "if the express company's property were taxed *ad valorem* on each piece, there could be no contention that it would be obliged to pay the tax on the building here involved." Of course, it would be under no legal obligation to pay such a tax, but it would be under the practical necessity of doing so in order to prevent losing its title and being dispossessed through forfeiture for nonpayment of taxes.

The next and important fault which, to me, seems to exist in the reasoning of the majority lies in this sentence: "The mere fact that it [the express company] leases it and uses it exclusively in its business does not change the taxable status of the property, nor does the fact that its taxes are measured by its gross earnings." Of course the property remains taxable. But having become (under the lease) property of the express company for purposes of use, it necessarily has become a part of "its property" for purposes of taxation, taxable and taxed under the commuted gross earnings system.

That meets and, it is submitted, disposes of the conclusion of the majority argument reading thus: "The corporation's tax, measured by gross earnings, covers no more property than would be covered by an *ad valorem* tax assessed against its property piece by piece."

Plainly, if the express company owned this land and devoted it to its express business, the tax thereon would be included in the levy on its gross earnings. How is the problem changed in real substance by the fact that instead of fee ownership the express company is a lessee, the character of user being the same and devotion of the property to express business being as complete as it could have been in any case?

The theory of gross earnings taxation of the property of express companies is identical with that of taxation of railroad property devoted to railroad use. Very recently we have said, speaking

through none other than Mr. Justice Loring, that "the gross earnings tax by its terms is in lieu of an *ad valorem* tax on the ownership as well as the operation of property which is devoted to railroad purposes, and it does not change the situation that the tax in its nature falls entirely on the lessee operator." State v. Duluth, M. & N. Ry. Co. 207 Minn. 618, 628, 292 N. W. 401, 407.

That was but an elaboration of what was said in Railway Exp. Agency, Inc. v. Holm, 180 Minn. 268, 271, 230 N. W. 815, 816. "But upon principle and reason we believe such [gross earnings] tax always contemplated all property used in the particular business." Personally, I think that should remain the law until it is changed by the legislature. It is respectfully submitted that, in effect, this decision amends the statute so as to result in a duplication of tax not intended by the legislature.

The circumstance that the lessor is bound by a covenant with the lessee to pay the tax is wholly irrelevant to the present issue. It would be an interesting task (were we to hold, as I think we should, that the express company pays the tax under the gross earnings levy) to frame a defense for the owner were the express company to sue him on that covenant. Having by the commuted gross earnings method paid the tax on respondent's real estate, what defense would he have to such a suit on his unambiguous covenant?

My submission is that the judgment is right and should be affirmed.