**Wellington R. BURT and Catharine H. Burt**

v.

**UNITED STATES.**

No. 120-56.

United States Court of Claims.
March 4, 1959.

David W. Richmond, Washington, D. C., Frederick O. Graves and Miller & Chevalier, Washington, D. C., on brief, for plaintiffs.

William T. Kane, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., James P. Garland and Lyle M. Turner, Washington, D. C., on the brief, for defendant.

White & Case, A. Chauncey Newlin, William L. Hearne and Edmund W. Pavenstedt, New York City, filed a brief for United States Steel Corporation, amicus curiae.

John W. Windhorst, Charles O. Howard and Dorsey, Owen, Scott, Barber & Marquart, Minneapolis, Minn., filed a brief for Iron Ore Lessors Ass'n, Inc., amicus curiae.

JONES, Chief Judge.

The basic issue in this case is how the statutory depletion allowance under the special terms of the iron ore mining lease involved here shall be divided between lessor and lessee. The incidental question is whether plaintiffs, as lessors, are entitled to include as a part of their gross income from the property the ad valorem taxes paid by the operating lessee pursuant to the terms of the lease contract.

The plaintiffs (hereinafter referred to as "lessor") owned a $\frac{1}{12}$ interest in the lands containing the minerals that were the subject matter of the taxes in question. The lease was made in 1900 for a term of 50 years, and was extended in 1926 to run until 1979.

The lessee might surrender the lease at any time by giving 30 days' notice, and in that event would be permitted "to

remove all engines, tools, machinery, railway tracks or structures erected or placed by it upon the said premises \* \* \*." The lessor might cancel for failure to perform the covenants.

The lessee agreed to pay all the taxes on the property so long as the lease was being operated and, in addition, also to pay a royalty of 25 cents for each gross ton mined.

The plaintiffs claim that the payment of the ad valorem taxes by the lessee should be included as a part of the gross revenue on which their depletion should be allowed.

The pertinent Minnesota statutes are found in section 272.01 et seq. (18 Minn. Stat.Ann.). The depletion provision is found in section 114(b) (4) of the Internal Revenue Code of 1939, as amended, 26 U.S.C. (1952 ed.) pertinent parts of which are set out in the footnote.[1]

The ad valorem tax is imposed generally on all real and personal property in the State. Iron ore, however, is classified separately and valued at a higher percentage of its full and true value than any other type of property. This tax applies to the ore whether mined or unmined.

Both the lessor and lessee are entitled to depletion allowance of 15 percent measured by their respective interests in the gross income from the mine operations. Certain interested parties claim that the lessor is entitled to depletion allowance limited to the payment that is made to it in cash; while the lessor asserts that the terms of the contract by which the lessee agrees to pay all taxes against the property, make the payment of that portion of the ad valorem taxes on the minerals in place a part of plaintiffs' income on which they are entitled to depletion allowance. Lessor claims that in the absence of a lease such taxes would be levied against the property itself and paid by the plaintiffs, and that when the lessee agrees to pay such taxes, that payment becomes a part of the plaintiffs' production income on which they are entitled to depletion allowance.

A vital collateral issue is, who is primarily liable for the payment of such taxes.

It goes without saying of course that taxes as such are no part of income for anyone. That is not the question here. The question is whether the payment of those taxes by the lessee, rather than a larger royalty or rental payment, has the effect of making that payment a part of lessor's rental or royalty production income.

The defendant apparently has little financial interest in the matter, except to get the question settled, although the Government seems to indicate that the practical method is to divide the gross income in proportion to their respective interests. The defendant concedes, for the purpose of this action, that "the taxpayer is entitled to include in his gross income from the mineral property for the purposes of computing his depletion allowance his one-twelfth share of all royalty taxes paid by his lessee." (Defendant's brief, p. 17.)

The issue involved here is very much simplified by the stipulation of the parties to the effect that the ad valorem taxes which are in issue here are limited to the taxes on the mineral interest only. As stated in defendant's brief, "The ad valorem taxes referred to in this suit are taxes on the mines and minerals only." (Defendant's brief, p. 5.)

By the terms of the lease, the lessee was to pay plaintiffs a minimum royalty so long as it held the lease regardless of whether they mined a sufficient amount of ore during the particular year for the royalty to amount to the minimum, but such amount was to be

---

1. Section 114(b) (4). "Percentage depletion for coal and metal mines and for certain other mines and natural mineral deposits.

"(A) In general. The allowance for depletion under section 23(m) in the case of the following mines and other natural deposits shall be—

\*    \*    \*    \*    \*

"(iii) in the case of metal mines, \* \* \* 15 per centum, \* \* \*"

treated as advance royalty and might be deducted from any excess production during a subsequent period.

■ We are unable to escape the conclusion that under the terms of this particular lease the payment of the ad valorem taxes in the minerals in place was a part of the royalty compensation to plaintiffs. But for the provision in the lease that the mineral taxes were to be paid by the lessee, the levy would have been an in rem tax against the land itself, of which plaintiffs were the actual owners. Undoubtedly if the lessee had not agreed to pay these taxes the plaintiffs would have asked for and been entitled to a larger royalty payment in cash or in an increased percentage or payment of some kind. It seems to us, in essence, that it was a part of the total production income which the plaintiffs received and therefore they are entitled to the statutory depletion allowance on their part of the total production income which includes the ad valorem tax on the minerals as a part of the compensation, rent, or royalty.

The statutes of the State of Minnesota impose three distinct taxes in respect to mining properties—an occupation tax, a royalty tax, and an ad valorem tax.

The occupation tax is manifestly the obligation of the lessee and is not involved here.

The royalty tax is imposed upon all royalty received annually by any person who has granted permission to remove ore from land in the State.

The ad valorem tax is imposed upon the value of all real and personal property in the State of Minnesota. However, by agreement of the parties the taxes under consideration in this case are those imposed on the mineral properties only.

■ The royalty tax imposed by the State of Minnesota on minerals in place is a tax imposed on the owners of the land and while it is a tax in rem, if the owners expect to hold the property the tax must be paid. Lake Superior Consolidated Iron Mines v. Lord, 1925, 271 U.S. 577, 46 S.Ct. 627, 70 L.Ed. 1093.

The Minnesota Supreme Court in the case of Marble v. Oliver Iron Mining Co., 1927, 172 Minn. 263, 215 N.W. 71, adopted this analysis. We quote from that opinion the following:

"* * * We conclude the royalty tax to be a tax on the right, title, and interest in ore lands of the owner thereof who has granted another the right to mine the ore for a stipulated consideration, payable at certain times during a period of years." 172 Minn. at page 265, 215 N.W. at page 71.

"* * * The covenant is clear, and, while the royalty tax was not in the mind of the parties when the lease was made, it is a tax duly imposed by public authority upon the lessor's estate in the demised premises which the tenant assumed to pay." 172 Minn. at pages 269–270, 215 N.W. at page 73.

See also Fletcher v. Lorain Iron Mining Company, 1927, 172 Minn. 271, 215 N.W. 180.

In this particular case the royalty taxes were actually paid by the lessee; yet this payment was because of the covenant in the lease, and constituted an additional consideration for the right given to the lessee to use the lessor's property for mining purposes.

Under the Minnesota decisions, in construing a lease it has been held that the lessee has a leasehold interest in the property as a tenant under the lease, but that no part of the property has been sold, and the lessee is not an owner in any sense of the word. State v. Evans, 1906, 99 Minn. 220, 108 N.W. 958.

We quote the following sentence from State ex rel. Inter-State Iron Co. v. Armson, 1926, 166 Minn. 230, 207 N.W. 727, at page 731:

"* * * Under the conventional mining lease, money so paid is rent and not the purchase price of the ore in place."

Numerous cases of Minnesota courts might be cited supporting the plaintiff's position that the payment by the lessee of the royalty and ad valorem taxes is the equivalent of the payment of additional rents or royalties for the use of the lessor's mining property.

■ While the ad valorem tax on the minerals in place is a tax in rem it is a primary obligation of the owner of the land. It is true the lease grants the mining privileges to the lessee until the year 1979, yet at the same time the lessee has the privilege, on 30 days' notice, of surrendering the lease. He, therefore, has no obligation to pay the ad valorem taxes on the minerals in place for any definite period of time. Should he decide to surrender the lease and remove his machinery and equipment he would immediately escape all obligation to pay such taxes thereafter; while the owner of the land would still be obligated to pay.

■ Of course, taxes as such are not a part of royalty production for either the lessor or the lessee. In this particular case we are not holding that as taxes they are the subject of depletion but as part payment to the lessee of his part of the depletion allowance, it being a part of the yardstick to measure lessor's share of the income from the production of iron ore in connection with the grant or privilege to the lessee to conduct the mining operations on the property.

The same logic does not apply to the lessee's payment of the in rem taxes on the property. They are not a part of his income from the property, but are a part of the payment of the cost of securing the mining lease privilege on plaintiffs' property. He may be entitled to charge it off as a part of his expense or as a part of the cost of the property, but such taxes are certainly not a part of his production income. He is entitled to a depletion allowance on his income from the production of the property but this income certainly does not include the taxes which he may have paid.

The defendant cites the case of Marble v. Oliver Iron Mining Co., 1927, 172 Minn. 263, 215 N.W. 71 for the proposition that interests or estates in land may be segregated and taxed separately. This is, of course, true but that case had particular reference to ore lands as distinguished from the business or occupation of mining the ore. The occupation tax is not involved here. It is clearly the obligation of the lessee. Here, not only is the occupation tax not involved, but neither are all of the ad valorem taxes. There is involved merely the ad valorem tax on the minerals in the land. The Marble case therefore is not applicable to the instant question.

The defense also cites the case of Commissioner of Internal Revenue v. Southwest Exploration Co., 1956, 350 U. S. 308, 76 S.Ct. 395, 100 L.Ed. 347, affirming Huntington Beach Co. v. United States, 1955, 132 F.Supp. 718, 132 Ct. Cl. 427. There, however, an entirely different question was involved. The oil to be drilled was under water which was used as a bathing resort. The only way in which the State of California, which owned the property, would permit any drilling was for the lessee to arrange in advance for an upland drilling site and the drilling to be done in a slanting fashion. The Court held in that case, in effect, that it was all one contract as part and parcel of the lease contract to the drilling operators. It was required that they obtain a drilling site, otherwise the lease would not be granted. It all therefore became a part of one transaction. The Court held that each of the parties had an interest in the oil production and that the depletion allowance should be divided in proportion to their respective interests. No ad valorem taxes on the property itself was in any way involved. We quote from that opinion at page 312 of 350 U.S., at page 398 of 76 S.Ct.:

" * * * The depletion allowance in the Internal Revenue Code of 1939 is solely a matter of congressional grace; it is limited to 27½% of gross income from the property

after excluding from gross income 'any rents or royalties' paid by the taxpayer with respect to the property."

As showing that it was all a part of one contract, we quote from page 315 of 350 U.S., at page 399 of 76 S.Ct.:

"Southwest's right to drill was clearly a conditional rather than an absolute grant. Without the prior agreements with the upland owners, Southwest could not even have qualified as a bidder for a state lease. Permission to use the upland sites was the express condition precedent to the State's consideration of Southwest's bid, and it was one of the express conditions on which 'Easement No. 392' was granted to Southwest. For a default in that condition the State retained the right to re-enter or to cancel the lease. Thus it is seen that the upland owners have played a vital role at each successive stage of the proceedings. Without their participation there could have been no bid, no lease, no wells and no production."

It will thus be seen that in the Southwest Exploration Co. case an entirely different question was involved. Each party was allowed depletion on his part of the production income.

We are making exactly the same application here. The lessee has been granted depletion allowance on his part of the income from the property which, of course, does not include the expense or cost item of any ad valorem taxes which he may have contracted to pay as a condition to the drilling operations. We are also allowing the lessor a depletion on his part of the production income which necessarily includes the ad valorem taxes on the minerals in place. These taxes he would normally be required to pay as the owner of the land, but the lessee under the terms of the lease agreed to pay these taxes. The sums involved in such payment became part and parcel of lessor's production income from the property.

The case of Helvering v. Mountain Producers Corporation, 1938, 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907, cited by interested parties, involved the expense of drilling and is therefore wholly inapplicable to the case at bar.

We can see no basis for the statement in Revenue Ruling 16, that in the absence of an agreement between the parties "the ad valorem taxes would doubtless have been shared between them". As we read the decisions of the Minnesota courts, in the absence of an agreement the State would have exacted the tax from the lessor because he was the owner of the property.

We quote from the opinion in Marble v. Oliver Iron Mining Co., supra, 172 Minn. at page 266, 215 N.W. at page 72, the following sentence:

"In the absence of the covenant, the tax would, no doubt, have to be paid by the lessor to protect his title to the land."

To the same effect is the case of State v. Fawkes, 1941, 210 Minn. 587, 299 N. W. 666. The Supreme Court of the State of Minnesota also in State ex rel. Oliver Iron Mining Co. v. Armson, 1930, 181 Minn. 221, 232 N.W. 35, stated that whether the lessee paid the ad valorem tax or any other tax is a matter of contract.

Of course it follows naturally that if the lessee had cancelled the lease, which he had a right to do at any time, the ad valorem taxes on the minerals in place would have remained the same and would have been paid by the plaintiffs since they were the owners of the property.

Undoubtedly the lessee had an economic interest in the property, otherwise it would not have been entitled to any depletion. This economic interest, however, is not an estate in the property and is not the interest on which an ad valorem tax is levied. That tax under the Minnesota law is based on the value of the property, as in all cases of real property tax. The fact that the lessee contracts to pay such tax does not make it a tax imposed on the lessee. Under the

Minnesota decisions it is clear that the owner is in constructive receipt of the amount of such tax payment as additional rent for the property and he is entitled to the depletion allowance on this as a part of the production income of the properties in question. The lessee's deduction is for rent rather than for taxes paid.

The conclusion is inevitable that under the wording of the Minnesota law which treats the lessee's payment, in whatever form it may be, as rent, as well as under the peculiar wording of the lease contract in the instant case, the plaintiffs are entitled to a depletion allowance of the actual rental or royalty paid in cash plus the additional royalty as compensation paid to the plaintiffs by the lessee pursuant to a contractual obligation to pay the ad valorem taxes on the minerals in place. It is perhaps true that the lessee is entitled to a depletion allowance on his proportionate part of the production income. This question, however, is not before us in the instant case.

█ It seems manifest that the realty taxes under the Minnesota law, as interpreted by the Supreme Court of that State, are a primary burden on the legal owner of the property and that the payment of such taxes by another under contract constitutes by any reasonable rule of construction a part of the gross income of such owner.

The writer is familiar with one oil lease contract covering 1,000 acres, only a small part of which was believed by the parties to be an area of production. The lease contract provided that the owner, for a three-year period of production should receive only a payment of all taxes by the lessee. After three years he was to receive the payment of all taxes or $\frac{1}{8}$ of the proceeds of the oil produced, whichever was larger.

Does anyone believe that in such a contract the lessee would be entitled to all the depletion allowance and the lessor to none; or that in the event the $\frac{1}{8}$ royalty exceeded the amount of taxes, the owner's part of the depletion allowance should be limited to the excess of payments above the amount of the taxes?

Plaintiffs are entitled to recover with interest thereon as provided by law, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

LARAMORE, MADDEN, and WHITAKER, Judges, concur.