Meyer **HANDELMAN**, William **Handelman**, Donald N. Hanson, Laird Lucas and Frederick T. Weyerhaeuser, Trustees *

v.

The **UNITED STATES**.

No. 169-63.

United States Court of Claims.
March 18, 1966.
On Motion for Reconsideration
May 25, 1966.

* The trustees were substituted as successors in interest to the Mississippi Land Company on October 14, 1965, after the report of the trial commissioner had been filed. In the court's opinion and findings the terms "plaintiff" and "taxpayer" refer to the Mississippi Land Company. In the court's conclusion of law the term "plaintiffs" refers to the trustees.

John J. King, St. Paul, Minn., attorney of record, for plaintiffs. Briggs & Morgan, St. Paul, Minn., of counsel.

Sheldon P. Migdal, Washington, D. C., with whom was Acting Asst. Atty. Gen. Richard M. Roberts, for defendant. C. Moxley Featherston, Lyle M. Turner and Philip R. Miller, Washington, D. C., of counsel.

White & Case, A. Chauncey Newlin, William L. Hearne and Edmund W. Pavenstedt, New York City, filed a brief for United States Steel Corporation, amicus curiae.

Before COWEN, Chief Judge, WHITAKER, Senior Judge, and LARAMORE, DAVIS and COLLINS, Judges.

PER CURIAM: **

Plaintiff brings this action for a refund of income taxes for the years 1954–1958, alleging it is entitled to claim a 15-percent-depletion allowance on all ad valorem taxes on minerals in place paid by its lessees.

Plaintiff, Mississippi Land Company, is the owner of certain iron-ore-bearing lands in Minnesota. These lands were subject to various operating leases during the years in question, 1954 through 1958. Only five of the leased mines thereon are involved in this action.

Under the terms of each lease, the lessee was to pay plaintiff a royalty of so much per ton on all ore mined and shipped. The lessees also covenanted to pay all taxes on the land, on the iron ore, and on the improvements and personal property thereon. It is admitted that only the taxes levied on the minerals in place are in question here.

The Minnesota ad valorem taxes on the minerals in place for the years 1954 through 1958 totaled $685,681.56. Pursuant to the leases, these taxes were paid in full by the lessees of the five mines involved. While treating the tax payments as income in part, plaintiff-lessor did not include the full amount of the paid taxes as "gross income from the property" on which it could claim the benefit of the 15-percent-depletion allowance of sections 611 and 613 of the Internal Revenue Code of 1954.

Revenue Ruling 16, 1953–1 Cumulative Bulletin 173, in effect during the years 1954 through 1958, had permitted the lessor, and the lessee to agree as to the proportionate values of their respective interests in the property and to use such values, if reasonable, as a basis for allocating the ad valorem taxes between the parties. That portion of the lessor's taxes paid by the lessee was to be included by the lessor as depletable income.

Pursuant to the above Revenue ruling, plaintiff and the lessees had entered into agreements sharing the amounts of the taxes for depletion purposes. As a result of these sharing agreements, plaintiff included as "gross income from the property" for depletion purposes $305,322.45 of the paid ad valorem taxes. Plaintiff did not include the remaining $380,359.11 of the ad valorem taxes as income for depletion purposes.

In 1959, the Court of Claims held in Burt v. United States, 170 F.Supp. 953, 145 Ct.Cl. 282 (1959), that ad valorem taxes on iron ore minerals in place, paid by the lessee under the lease, were part of the royalty compensation to the lessor. It was held that the sharing agreements under Revenue Ruling 16, supra, were improper and that all of the amounts paid by the lessee as ad valorem taxes on the minerals in place were to be treated as depletable income of the lessor.

Plaintiff then timely filed for a refund of corporate income taxes paid during the years 1954 through 1958 on the ground that it should have claimed the 15-percent-depletion allowance on the $380,359.11 it had not included as "gross income from the property" for depletion purposes. Plaintiff's claims for refund for the years 1954 through 1958 were denied in full on July 19, 1963. Plaintiff then filed its claim for refund in the United States Court of Claims. It is agreed that if plaintiff is entitled to include all or most of the remainder of the ad valorem taxes paid by the lessees as "gross income from the property," it is entitled to a refund.

The issue in this case is narrow, since the defendant concedes that the ad valorem taxes on the minerals in place are a primary obligation of the owner-lessor and the payment of such taxes by the lessee is a discharge of such obligation and therefore income to the lessor. The specific issue in this case is how much, if any, of this particular income of the lessor is "gross income from the property" upon which the lessor should be allowed a 15-percent-depletion deduction under

** This opinion incorporates, with minor changes, the opinion prepared, at the direction of the court under Rule 57(a), by Chief Trial Commissioner Marion T. Bennett.

the Internal Revenue Code of 1954, section 613.

Plaintiff relies on Burt v. United States, supra, in which this court held that a lessor was entitled to include as gross income from the property for depletion purposes all of the ad valorem taxes on the minerals in place paid by the lessee pursuant to the lease. The principle of the *Burt* case was expressly agreed with, by the Tax Court, in Winifred E. Higgins, 33 T.C. 161 (1959).

Plaintiff contends that the present case is on "all fours" with the *Burt* case and it is therefore entitled to a depletion allowance on that part of the ad valorem taxes not treated as "gross income from the property" during the years 1954 through 1958. Defendant alleges, but shows no proof, that the same factual inferences cannot be drawn from this case as were drawn in the *Burt* case. The only apparent disparity in the facts is the respective lease-termination provisions in the two cases. However, that defense will be taken as abandoned since it was not pursued by the defendant. Defendant relies principally upon an argument that the *Burt* case was decided erroneously because the Government admittedly presented the wrong defense when that case was before the court. Defendant now argues that since the payment of the ad valorem taxes by the lessee was not dependent solely on production of the ore, the lessor should not be allowed depletion on any part of that income. In short, defendant contends this court should overrule the decision it rendered 5 years ago in Burt v. United States, supra.

It is necessary, first, to review the opinion rendered in Burt v. United States, supra. That case involved iron-ore-producing property in which the lessor owned a one-twelfth interest. The lessee had agreed to pay all the taxes on the property. The lessor claimed that all of the payment of the ad valorem taxes by the lessee should be included as a part of the gross revenue of the lessor on which depletion should be allowed. Only

the tax on the iron ore in place was in question. It was held that the taxes paid were a part of the royalty compensation of the lessor since the lessor would have demanded a larger cash payment or increased percentage payment on each ton in the absence of the tax payment provision. At page 956 of 170 F.Supp., at page 285 of 145 Ct.Cl. the court said:

We are unable to escape the conclusion that under the terms of this particular lease the payment of the ad valorem taxes on the minerals in place was a part of the royalty compensation to plaintiffs. But for the provision in the lease that the mineral taxes were to be paid by the lessee, the levy would have been an in rem tax against the land itself, of which plaintiffs were the actual owners. Undoubtedly if the lessee had not agreed to pay these taxes the plaintiffs would have asked for and been entitled to a larger royalty payment in cash or in an increased percentage or payment of some kind. It seems to us, in essence, that it was a part of the total production income which the plaintiffs received and therefore they are entitled to the statutory depletion allowance on their part of the total production income which includes the ad valorem tax on the minerals as a part of the compensation, rent, or royalty.

It appears that the present case is almost identical to the *Burt* case, and defendant has made no serious attempt to distinguish it on the facts. Under the *Burt* decision, the plaintiff is clearly entitled to claim the ad valorem tax payments as depletable income and is therefore entitled to a refund. Defendant can prevail in this action only if Burt v. United States, supra, is reversed, so the issues decided in the *Burt* case will be reexamined here.

As was stated previously, defendant now admits that the ad valorem tax is a primary obligation of the owner-lessor in Minnesota. That question was litigated in the *Burt* case and the court said

at page 957 of 170 F.Supp., at page 287 of 145 Ct.Cl.:

> While the ad valorem tax on the minerals in place is a tax in rem it is a primary obligation of the owner of the land. * * *

While the plaintiff offers additional authority in support of this position, the defendant states that it does not question the correctness of the decision on that issue.

One more crucial step in setting the background of the present issue was decided in the *Burt* case and again is not challenged. The court held that the leasehold interest held by the lessee was not a purchase of the property and that the owner of the land remained the owner of the minerals upon which the tax was levied. The court cited as authority for that position State v. Evans, 99 Minn. 220, 108 N.W. 958 (1906), in which the Supreme Court of Minnesota stated, at page 227, at page 960 of 108 N.W.:

> The propriety of a lease for the purpose of developing and working mines is recognized by all of the cases, and the rule established by the great weight of authority that such leases do not constitute a sale of any part of the land. * * *

■■ There is ample support for the conclusion that the plaintiff-lessor in the present case remained the owner of the iron ore upon which the ad valorem taxes were levied and that payment of such taxes was its (lessor's) primary obligation.

■ It is also established that the discharge of a lessor's tax obligation by a lessee under the lease is additional rent and, thus, income to the lessor. Treasury Regulations § 1.162–11 (1958) provides:

> * * * Taxes paid by a tenant to or for a landlord for business property are additional rent and constitute a deductible item to the tenant and taxable income to the landlord, * * *.

This exact provision, as embodied in previous Treasury regulations, was given express approval by the Supreme Court in United States v. Boston and Maine Railroad, 279 U.S. 732, 735, 49 S.Ct. 505, 73 L.Ed. 929 (1929).

The only serious challenge defendant now makes to the principle of the *Burt* case is that this income of the lessor is not "gross income from the property" so as to qualify for the percentage depletion allowance. Sections 611 and 613 of the Internal Revenue Code of 1954 read as follows:

### SEC. 611. ALLOWANCE OF DEDUCTION FOR DEPLETION

(a) *General Rule.*—In the case of mines, oil and gas wells, other natural deposits, and timber, there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; * * *.

(b) *Special Rules.*—

(1) *Leases.*—In the case of a lease, the deduction under this section shall be equitaby apportioned between the lessor and lessee.

\* \* \* \* \* \*

### SEC. 613. PERCENTAGE DEPLETION.

(a) *General Rule.*—In the case of the mines, wells, and other natural deposits listed in subsection (b), the allowance for depletion under section 611 shall be the percentage, specified in subsection (b), of the gross income from the property excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 percent of the taxpayer's taxable income from the property (computed without allowance for depletion). In no case shall the allowance for depletion under section 611 be less than it would be if computed without reference to this section.

(b) *Percentage Depletion Rates.*— The mines, wells, and other natural

deposits, and the percentages, referred to in subsection (a) are as follows:

\* \* \* \* \* \*

(3) 15 percent—\* \* \* metal mines \* \* \*

\* \* \* \* \* \*

(c) *Definition of Gross Income From Property.*—For purposes of this section—

(1) *Gross income from the property.*—The term "gross income from the property" means, in the case of a property other than an oil or gas well, the gross income from mining.

Prior to the *Burt* case, the Internal Revenue Service allowed the lessor and the lessee to apportion amounts paid as ad valorem taxes between them according to their respective interests in the property. Revenue Ruling 16, 1953–1 Cumulative Bulletin 173, pages 175–176, provided:

\* \* \* in order to determine the amount of such taxes [ad valorem taxes] paid by the lessee for the account of the lessor it is necessary to ascertain the proportionate values of their respective interests in the property and to use such values as a basis for determining a ratio which is to be used to allocate the taxes between the parties. \* \* \* The ratio may be determined by the Bureau, in case no agreement can be reached between the parties, or, if an agreement thereon is reached between the parties which is considered reasonable by the Bureau, such ratio will be accepted. \* \* \*

\* \* \* where ad valorem property taxes are imposed on mineral-bearing lands and the lessee pays the lessor's share of such taxes pursuant to the mineral lease on the land, such payments shall be treated as additional royalties which are excludable from the lessee's gross income and includible in the lessor's depletable gross income \* \* \*. If there is insufficient gross income from production to cover the tax, such payments shall be treated as delay rental, a deductible expense

of the lessee and nondepletable income to the lessor.

The decision in the *Burt* case, in essence, rejected the first two provisions of Revenue Ruling 16 and upheld the third provision but held the lessor's share of the taxes to be 100 percent. The court held that the lessee had no interest upon which ad valorem taxes were levied so there could be no apportionment of such taxes for depletion purposes.

The Government now agrees that there should be no apportionment though it argued for that very point in defending the *Burt* case. Revenue Ruling 64–91, 1964–1 Cumulative Bulletin 219, states at page 220:

The Service now considers that the wrong issue was presented for decision in the *Burt* case in that it was conceded that the lessor in that case was entitled to treat a portion of the ad valorem taxes paid by the lessee as gross income from the property subject to the depletion allowance and the case was defended on the basis of the allocation rule provided for in Revenue Ruling 16. Upon further consideration, the Service now agrees with the rejection of the Revenue Ruling 16 position that there should be such an allocation. \* \* \*

Defendant now contends that the lessor should not be allowed to claim any portion of the paid taxes as depletable income, stating its principle as follows:

In order for an amount to constitute "gross income from mining" its payment must be dependent solely on the production or extraction of the mineral.

The basis of this contention is that the lessee is required to pay the ad valorem taxes without regard to any actual production or extraction of the ore. The defendant cites a series of Supreme Court cases for the proposition that a payment must be solely dependent upon actual extraction of the ore before it can qualify for the depletion allowance. This court did not reach that particular issue in the *Burt* case because it was not raised

as a defense. It must now be resolved whether or not the *Burt* decision can survive this new defense.

The Supreme Court has heard many cases dealing with the problem of depletion allowances. One of the earlier cases decided in this area was Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L. Ed. 489 (1933). In that case the taxpayer transferred his rights to some oil lands to a third party in return for a present cash payment and a future cash payment "out of oil produced." The Commissioner refused to allow the taxpayer to claim the depletion allowance on the future payments made out of the oil on the grounds that this conveyance was a sale in which the taxpayer retained no interest in the oil which could suffer depletion. The Supreme Court reversed the Commissioner and allowed the depletion on the grounds that regardless of the name given the conveyance, the taxpayer did have an interest in the oil and his payment was dependent upon an actual depletion of the oil. The Court set forth two principles which it used as guidelines to determine whether a party should be permitted to claim depletion.

1. The person must have an interest in the oil or mineral in place.

2. The return of that interest must be dependent upon the extraction of the oil.

These principles set the stage for later Court decisions on the depletion provisions of subsequent Internal Revenue acts.

In another important case, Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277 (1940), the Court reaffirmed its previous position along with some clarification. In that case, Anderson had purchased some oil lands, agreeing to pay $50,000 in cash and $110,000 from one-half of the proceeds derived from oil and gas production or from the sale of any of the land. The vendor also had a lien on the land. At page 408, 60 S.Ct. at page 954, the Court quoting from Helvering v. Elbe Oil Land Co., 303 U.S. 372, 375, 58 S.Ct. 621, 82 L.Ed. 904, said:

* * * "The words 'gross income from the property,' as used in the statute governing the allowance for depletion, mean gross income received from the operation of the oil and gas wells by one who has a capital investment therein,—not income from the sale of the oil and gas properties themselves."

In Anderson v. Helvering, supra, 310 U. S. at page 412, 60 S.Ct. at page 956, the Supreme Court stated:

* * * Oklahoma Company [vendor] is not dependent entirely upon the production of oil for the deferred payments; they may be derived from sales of the fee title to the land conveyed. It is clear that payments derived from such sales would not be subject to an allowance for depletion of the oil reserves, for no oil would thereby have been severed from the ground;

* * *. We are of opinion that the reservation of this additional type of security for the deferred payments serves to distinguish this case from Thomas v. Perkins [301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324 (1937).] It is similar to the reservation in a lease of oil payment rights together with a personal guarantee by the lessee that such payments shall at all events equal the specified sum. In either case, it is true, some of the payments received may come directly out of the oil produced. But our decision in Thomas v. Perkins does not require that payments reserved to the transferor of oil properties shall for tax purposes be treated distributively, and not as a whole, depending upon the source from which each dollar is derived. An extension of that decision to cover the case at bar would create additional, and in our opinion unnecessary, difficulties to the allocation for income tax purposes of such payments and of the allowance for depletion between transferor and transferee. In the interests of a workable rule, Thomas v. Perkins must not be extended beyond the situation in which, as a matter of substance without regard to formalities of convey-

ancing, the reserved payments are to be derived solely from the production of oil and gas. * * *

In allowing Anderson, the vendee, to claim the entire amount of the depletion, the Court said at page 408, 60 S.Ct. at page 954:

* * * The deduction is therefore permitted as an act of grace and is intended as compensation for the capital assets consumed in the production of income through the severance of the minerals. Helvering v. Bankline Oil Co., 303 U.S. 362, 366–367 [58 S.Ct. 616, 82 L.Ed. 897]. The granting of an arbitrary deduction, in the interests of convenience, of a percentage of the gross income derived from the severance of oil and gas, merely emphasizes the underlying theory of the allowance as a tax-free return of the capital consumed in the production of gross income through severance. Helvering v. Twin Bell Oil Syndicate, 293 U.S. 312, 321 [55 S.Ct. 174, 79 L.Ed. 383]; United States v. Dakota-Montana Oil Co., 288 U.S. 459, 467 [53 S.Ct. 435, 77 L.Ed. 893].

Both of the above Supreme Court cases involve the sale and not the lease of oil-producing lands but they must be considered as setting the tenor of the Court's attitude toward application of the depletion allowance.

The next case, Kirby Petroleum Co. v. Commissioner of Internal Revenue, 326 U.S. 599, 66 S.Ct. 409, 90 L.Ed. 343 (1946), does involve leased property. Kirby Petroleum leased its land to another for 20 percent of the profits from production in addition to its royalties and bonuses. The Commissioner did not allow Kirby to claim depletion on the 20-percent-profit-sharing portion of the income. But, finding that Kirby had an "economic interest" in the property the Court allowed him to claim the deduction, as his only source of payment was from net profit of production.

Later in 1946 the high Court again had occasion to consider the rights of les-

sors and lessees with regard to depletion. In Burton-Sutton Oil Co. v. Commissioner of Internal Revenue, 328 U.S. 25, 66 S.Ct. 861, 90 L.Ed. 1062 (1946), the plaintiff had agreed to pay his grantor 50 percent of the proceeds from the oil produced. At page 32 the Supreme Court said, at page 866 of 66 S.Ct., "It seems generally accepted that it is the owner of a capital investment or economic interest in the oil in place who is entitled to the depletion." Continuing, the Court stated at page 34 at page 867 of 66 S.Ct.:

* * * Depletion depends only upon production. It is the lessor's, lessee's or transferee's "possibility of profit" from the use of his rights over production, "dependent solely upon the extraction and sale of the oil," which marks an economic interest in the oil. * * *

At page 35, at page 867 of 66 S.Ct., the Court remarks, "Obviously there could be no depletion without extraction."

In another case, Commissioner of Internal Revenue v. Southwest Exploration Co., 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347 (1956), the Supreme Court dealt with another related aspect of this vast and complex area of oil depletion allowances. In that case, Southwest had leased the premises of uplands' owners in order to drill for offshore oil belonging to the state. It was required, by state law in California, that a driller must put his machinery on land removed from the shore and drill on a slant to the oil under the water just offshore. Neither the driller nor the landowner "owned" the oil but the driller had received an easement from the state to remove it. An agreement was reached whereby the landowner was to receive 24½ percent of the net profits from production in return for the use of his land. Southwest claimed depletion on the whole production, but the Court of Claims held that the landowner could claim depletion on his portion of the proceeds. Huntington Beach Co. v. United States, 132 F.Supp. 718, 132 Ct.Cl. 427 (1955) aff'd, 350

U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347 (1956).

The Supreme Court affirmed the Court of Claims holding that the landowner did have an interest in the oil and he must look to the extraction of that oil for a return of his capital. Although there was no question as to the sole source of income of the landowner, the Court in Commissioner of Internal Revenue v. Southwest Exploration Co., supra, stated at page 314 of 350 U.S., at page 399 of 76 S.Ct.:

> The second factor has been interpreted to mean that the taxpayer must look *solely* to the extraction of oil or gas for a return of his capital, and depletion has been denied where the payments were not dependent on production, * * *.

While these Supreme Court cases must be considered in determining the Court's general philosophy toward the application of depletion allowances, it must be noted that all of these involve oil production rather than mining, and, more importantly, none of them specifically involve the payment of ad valorem taxes. The case presently before this court involves meshing the concept of ad valorem tax payments into the pattern established by the Supreme Court.

■ While the Internal Revenue Service has floundered from one position to another in applying the depletion provision with regard to lessors and lessees, the Court of Claims attempted in the *Burt* case to settle the issue as to paid ad valorem taxes. The adoption of that decision, by the Tax Court, in the *Higgins* case, supra, cloaks the position with considerable authority, and it should be overturned only in the face of very demanding circumstances or obvious error.

The court, in the *Burt* case, relied upon a very fundamental economic argument; that is, that the lessor would have demanded additional percentage payments from the ore production but for the lessee's agreement to pay the taxes, and that the lessee would not have covenanted to pay the taxes without some reasonable expectation that a like amount would return to him through sale of the severed ore. In essence, this argument is that the payment of the taxes is so directly related to actual production of the ore that it is to be treated as such. We have not had to reach the situation where the foregoing economic factors are not present.

■ While it is true that the depletion allowance is considered a matter of grace and should be applied strictly, the Supreme Court said in Commissioner of Internal Revenue v. Southwest Exploration Co., supra, page 315, page 399 of 76 S.Ct. "the tax law deals in economic realities, not legal abstractions, * * *." What are the "economic realities" of the present case?

These long-term leases of iron ore deposits in Minnesota have been devised as a means of extracting the ore from the property of the lessor in such a manner that it would be profitable to both the lessor and the lessee. The value of a long-term lease may not be known with any exactness at the time the lease is created, so various methods have been devised to introduce variables into the amount of payment due under the lease in order to protect both the lessor and the lessee. One of these is the payment of a percentage of the royalties to the lessor so that both the lessor's and the lessee's incomes vary directly with production. Another device designed to insure the lessor of an adequate return on his ore is the covenant in these leases for the lessee to pay the ad valorem taxes that may be levied on the property. The amount of these taxes is undetermined when the lease is entered into, so the only way the lessor can be assured of sufficient return to cover his obligations (that is, the taxes) is for the amount of payment for the ore to vary as the taxes vary. It is thus obvious, in an economic sense, that the payment of the ad valorem taxes is an integral part of determining the les-

sor's return on his ore and is merely an additional method of ascertaining the amount of his income from the ore.

The single purpose of the lease, of course, is for production of the ore, and the lessee would hardly subject himself to contractual liability for the ad valorem taxes without a very definite prospect of producing the ore. It must be remembered that the taxes in issue are on the ore alone. It would be unreasonable to assume that the lessor would continue to get the benefits of these payments over a very long period of time in the absence of any prospect of production out of which the lessee could retrieve his payment. The court noted that all of the leases in the *Burt* case had a 30-day-termination clause. In this case, the leases have a 60-day-termination clause except for the Hawkins Mine which has a 2-year provision. Little business acumen is needed to know that when it appears that further production will not be adequate to cover direct operating expenses and the ad valorem taxes, the lessee will terminate the lease and the obligation for the taxes will revert to the lessor. The conclusion is that the payment of these taxes is sufficiently related to production as to be dependent upon it.

In reply, the Government argues that while payment of the taxes may in fact come from production, there is a possibility that they will be paid when there is no production, and, therefore, payment is not dependent solely on production. Undoubtedly that possibility exists, but, as has been shown, it is inconsistent with economic reality. Without production, payment in most instances would be quickly curtailed. The Service has previously made provision for periodic receipt of income from sources other than severance of the mineral without entirely precluding the depletion allowance for those times when the income does actually come from extraction of the ore.

In the delay-rent situations, Treasury Regulations § 1.612–3(c) (1) and (2) (1960) provided that where an amount is paid to defer development of the property, which could have been avoided by abandonment of the lease, commencement of development operations or by obtaining production, that amount is in the nature of rent and is ordinary income to the payee (lessor) and not subject to depletion. Once production begins, however, the income is treated as subject to the usual depletion provisions.

There is no apparent reason why the ad valorem tax payments cannot be fragmented into annual units to determine whether each is production income or in the nature of a delay-rent. There is no present necessity for determining whether amounts to be received a half century from now will come from production or not. It will be known, when each annual tax report is filed, whether there was sufficient production to cover the payment of the taxes. It is agreed that simplicity in the application of the depletion provisions is desirable but, whenever possible, the court should avoid arriving at unrealistic results in the name of simplicity. The Government itself has chosen the 12-month year as the tax-paying unit. It should, in turn, allow the taxpayer to use a similar unit to determine if he has, in fact, suffered any depletion of his resources.

In summary, the economic reality of the situation shows that plaintiff is dependent upon the production of the ore for the return of his capital and therefore payment of the ad valorem taxes should normally be treated as "income from the property" subject to depletion. The difficulty with this result is the dilemma of the Government which becomes apparent in its application.

In a controversy initially involving primarily the lessor and the lessee, the Government has become the total loser. The Government has already allowed depletion on the full amount of the ad valorem tax payments apportioned between the lessor and the lessee. If it must now permit the lessor to again claim that amount once claimed by the lessee, the Government is being subjected to a double depletion allowance on that part of the income. Furthermore, the statute of limitations probably precludes the Government from assessing a deficiency

against the lessee for an improper deduction (see 26 U.S.C. §§ 1311–1315).

However, the Government's loss is of its own making. Failure to collect from the proper source does not give it the authority to collect from another source of its choosing. While it may prove an onerous burden on the Government to refund the taxes wrongfully paid, it must be done.

The conclusion we reach is in accord with what we understand to be the original view of the Internal Revenue Service (G.C.M. 26526, 1950–2 C.B. 40), holding that in oil and gas matters a lessee's payment of a lessor's ad valorem tax is "gross income from the property", as well as with the *Burt* decision and with the Tax Court's ruling in Winifred E. Higgins, supra, 33 T.C. 161 (1959). There are no sufficiently cogent reasons advanced for departing from these authorities and for changing the established law on the subject. Cf. Mississippi River Fuel Corp. v. United States, 314 F.2d 953, 161 Ct.Cl. 237 (1963).

Plaintiff conceded, at the oral argument, that there is one mine (involving a lease for the year 1956) in which the ad valorem taxes on the mine for that year exceeded production. Plaintiff has also admitted that it is not entitled to full depletion with respect to those taxes for that lease for that year. There may conceivably be other such instances. It will therefore be necessary to return the case to the trial commissioner for the computation, under Rule 47(c), of the proper amount of refund. Plaintiff is entitled to recover to the extent that the ad valorem taxes with respect to a particular lease for a particular year, when added to the production royalties plaintiff received and the royalty taxes paid on its behalf, do not exceed the proceeds of production under that lease for that year; to the extent of any excess, plaintiff is not entitled to treat such ad valorem taxes as "gross income from the property" within Section 613(a) of the Internal Revenue Code of 1954.[1]

---

1. Plaintiff's motion to expunge certain portions of the brief of the United States is denied.