John W. McLean and Dolores F. McLean, et al.,[1] Petitioners v. Commissioner of Internal Revenue, Respondent

Docket Nos. 4409–67, 4443–67—4452–67, 4470–67, 4471–67. Filed March 23, 1970.

*John W. Hughes*, for the petitioners.
*Charles L. Riter*, for the respondent.

[1] Cases of the following petitioners are consolidated herewith: John L. Washburn, docket No. 4443–67; Hope Washburn, docket No. 4444–67; Malcolm McLean and Wendy Heaton McLean, docket No. 4445–67; Genevieve Washburn, docket No. 4446–67; C. Russell McLean, Jr., and Ann H. McLean, docket No. 4447–67; Charles R. McLean, docket No. 4448–67; Martha Hooker Washburn, docket No. 4449–67; Christopher L. Sholes and Martha W. Sholes, docket No. 4450–67; Robert E. Bly and Carolyn M. Bly, docket No. 4451–67; Estate of Ruby Frisk Washburn, deceased, Charles S. Bellows, executor, docket No. 4452–67; Abbott M. Washburn and Wanda A. Washburn, docket No. 4470–67; and Abbott M. Washburn, docket No. 4471–67.

[1] Respondent concedes error in the disallowance in 1963 of depletion of $495.72 (15 percent of $3,304.77) which was due to a mathematical error unrelated to the sole issue in these cases. Adjustment has been made in this figure for the error.

## OPINION

The issue here is whether ad valorem property taxes on the minerals in place paid by a lessee pursuant to a clause in the lease are includable in the lessor's depletable gross income under sections 611 and 613, I.R.C. 1954.[2]

Section 611 provides that "In the case of mines, * * * there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion." And section 613 provides the deduction shall, in the case of "metal mines," be 15 percent of the "gross income from the property excluding from such gross income an amount equal to any

[2] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

rents or royalties paid or incurred by the taxpayer in respect of the property." Section 613 (c) defines the term "gross income from property" to mean "in the case of a property other than an oil or gas well, the gross income from mining."

It has long been held that the payment of State property taxes by the lessee pursuant to a provision of the mining lease, constitutes a part of the lessor's gross income from mining for the purpose of computing his percentage depletion. *Burt* v. *United States*, 170 F. Supp. 953 (Ct. Cl. 1959) ; *Winifred E. Higgins*, 33 T.C. 161 (1959) ; *Handelman* v. *United States*, 357 F. 2d 694 (Ct. Cl. 1966) ; *United States Steel Corporation* v. *United States*, 270 F. Supp. 253 (S.D.N.Y. 1967) ; *Louisiana Land & Exploration Co.* v. *Donnelly*, 394 F. 2d 273 (C.A. 5, 1968) ; and *Callahan Mining Corp.*, 51 T.C. 1005 (1969).

In the opinion in *Burt* v. *United States, supra*, the court stated :

Undoubtedly if the lessee had not agreed to pay these taxes the plaintiffs would have asked for and been entitled to a larger royalty payment in cash or in an increased percentage or payment of some kind. It seems to us, in essence, that it was a part of the total production income which the plaintiffs received and therefore they are entitled to the statutory depletion allowance on their part of the total production income which includes the ad valorem tax on the minerals as a part of the compensation, rent, or royalty.

\*     \*     \*     \*     \*     \*     \*

In this particular case the royalty taxes were actually paid by the lessee; yet this payment was because of the covenant in the lease, and constituted an additional consideration for the right given to the lessee to use the lessor's property for mining purposes.

\*     \*     \*     \*     \*     \*     \*

Numerous cases of Minnesota courts might be cited supporting the plaintiff's position that the payment by the lessee of the royalty and ad valorem taxes is the equivalent of the payment of additional rents or royalties for the use of the lessor's mining property.[3]

The holding in the *Burt* case is that—

the plaintiffs [lessors] are entitled to a depletion allowance of the actual rental or royalty paid in cash plus the additional royalty as compensation paid to the plaintiffs by the lessee pursuant to a contractual obligation to pay the ad valorem taxes on the minerals in place.

In our opinion in *Winifred E. Higgins, supra*, the opinion states "The only issue presented is whether ad valorem real estate taxes paid by lessee, United States Steel Corporation, on an iron ore mine are includible in lessor's gross income for such years as additional rent or royalty and thus part of lessor's gross income from the property."

---

[3] The opinion cites *Marble* v. *Oliver Mining Co.*, 172 Minn. 263, 215 N.W. 71 (1927) ; *State* v. *Fawkes*, 210 Minn. 587, 299 N.W. 666 (1941) ; *State ex rel. Oliver Iron Mining Co.* v. *Armson*, 181 Minn. 221, 232 N.W. 35 (1930) ; *Fletcher* v. *Lorain Iron Mining Co.*, 172 Minn. 271, 215 N.W. 180 (1927) ; and *State ex rel. Interstate Iron Co.* v. *Armson*, 166 Minn. 230, 207 N.W. 727 (1926).

The opinion went on to state that the parties agreed *Burt* v. *United States* was " 'on all fours' with the instant case" and the opinion ends with the statement: "We agree with the reasoning of the Court of Claims in the *Burt* case, as well as the conclusion reached by that court."

*Handelman* v. *United States, supra,* involved the payment by the lessee of the same Minnesota ad valorem tax as we have here under a provision of the mining lease. There respondent made the same argument that he advances here, to-wit: that in order for an amount to constitute "gross income from mining" its payment must be dependent solely on the production or extraction of the mineral and since the tax payment must be made by the lessee without regard to actual production or extraction of the ore, it cannot be considered "gross income from mining." The conclusion reached in *Handelman* was in accord with *Burt* and *Higgins:* that the lessor was entitled to treat the State ad valorem tax payments as income from the mining property subject to depletion.[4]

*United States Steel Corporation* v. *United States, supra,* is another case involving the same Minnesota ad valorem taxes paid by the lessee pursuant to the provisions of the lease. Here the lessee was the plaintiff and the lessee contended its tax payment was not depletable income to the lessor but should be included in lessee's gross income from mining. The court rejected the plaintiff's argument and held for respondent largely on the authority of the *Burt* and *Handelman* cases which are rather extensively reviewed in the opinion.

In the instant case the lessees were required to pay (1) minimum or advance royalty payments due each year on all except one mine which could later be offset against future production, (2) a royalty for each ton of iron ore mined and removed from the mine (less credit for minimum royalties paid by lessees), (3) the royalty taxes imposed by the State of Minnesota on the royalties paid by them, (4) the ad valorem taxes on the minerals in place, and (5) the ad valorem taxes on the surface.

Respondent admits the first three above payments by the lessee would be dependent upon production and petitioner conceded the *de minimis* amounts involved with respect to number 5 above or the payment of tax on the surface could be eliminated from its depletable income.

In the light of respondent's concession that the minimum royalty due and payable each year would be sufficiently dependent on produc-

[4] Plaintiff in this case conceded that there was one mine in which the ad valorem tax exceeded production in 1 year and plaintiff admitted he was not entitled to full depletion with respect to that tax payment for that lease for that year.

tion we see no basis for holding the lessee's ad valorem tax payment (No. 4 above) which the decided cases have all held is merely additional royalty payable each year, would not be dependent on production. Both the payments of the ad valorem tax and the payments of minimum royalties are without regard to the extraction of ore during the years of payment. For instance, the lease with the Oliver Iron Mining Co. specifically provides that the advance royalty shall be paid in equal quarterly installments even "in years when no ore is mined." [5]

We see no reason for departing from the rule of the above-cited authorities. It is true that the operation of this rule can give the lessor a depletion deduction in a year when no ore was mined (as does the advance royalty payment) but it is also true that the lessor's ultimate right to the depletion deduction will always depend solely upon production. The tax payment is equivalent to the bonus or advance royalty in that it is a royalty payment made without regard to production in the year of payment. In the event the mining lease is terminated without production and there has been prepayment of royalty the lessor must restore depletion deductions taken on prepaid royalty to income in the year the lease expired.

In *Douglas* v. *Commissioner*, 322 U.S. 275 (1944), the Supreme Court reviewed respondent's early regulations with respect to prepaid royalty which required as they do now (see sec. 1.612–3, Income Tax Regs.) that if for any reason a lease expires before the mineral which has been paid for in advance has been extracted, the deductions made in prior years on account of royalty on mineral paid for but not removed must be returned as income for the year in which the lease expires.

Petitioners admit that if any leases are terminated without production they will have to restore the depletion deductions they have taken into income in the year the lease is canceled.[6]

---

[5] As stated in our Findings of Fact, there was no production for some of the years involved here, and for prior years, from some of the mines covered by the leases. There was a suggestion in the opinion in *Handelman* that the yearly ad valorem tax payments made by the lessee should be held to be or not to be within lessor's gross income from mining each year of the lease, depending upon whether there was or was not extraction of ore that year. Respondent specifically argues against such a proposed rule saying it "ignores completely, the legal principle respondent believes * * * controls these cases. Whether there is or is not production does not solve the question; the question is whether the payments are *dependent solely on the production or extraction of the mineral.*"

[6] Petitioners point to the portion of the stipulation which we have set forth in our Findings of Fact showing that United States Steel Corp. or its subsidiary was the lessee of a mining lease in which the trust was lessor. This lease was from Jan. 1, 1905, until it was terminated on Nov. 5, 1964. During all of that period of time the lessee paid the ad valorem taxes on the minerals in place and on the surface but no iron ore was ever extracted from the mine. Upon cancellation of the lease in 1964 the trust reported as income in 1964 the amount of $10,498.10 which had been claimed as a depletion deduction in years prior to cancellation of the lease.

We hold that the trust beneficiaries, the petitioners in these cases, who are in the position of lessors of iron ore mining leases, may include within their depletable gross income the amount of ad valorem taxes on the minerals in place paid by the lessees during the years in issue pursuant to the terms of the leases. Because of concessions,

*Decisions will be entered under Rule 50.*

Reviewed by the Court.

DRENNEN, *J.*, concurring: I concur in the result because I believe the issue of whether the ad valorem property taxes on the mineral in place paid by the lessee is includable in petitioners-lessors' gross income from mining for depletion purposes where there has been production is controlled by our decisions in *Winifred E. Higgins*, 33 T.C. 161; see also *Callahan Mining Corp.*, 51 T.C. 1005; and because respondent waived any claim that the taxes were not includable in petitioners' gross income from mining in the years when there was no production from a particular property. I think it would be unfortunate, however, if the majority opinion is considered to stand for the proposition that the taxes mentioned above are includable in gross income from mining regardless of production or the amount thereof because the specific issue of whether those taxes are includable when there was no production during the taxable year was not argued. See the last paragraph of the opinion of the Court of Claims in *Handelman v. United States*, 357 F.2d 694, 704.

TIETJENS, RAUM, and TANNENWALD, *JJ.*, agree with this concurring opinion.