### MINERAL MINING CO. v. UNITED STATES (two cases).
### Nos. 8345, 8346.

Circuit Court of Appeals, Seventh Circuit.
May 22, 1944.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, and Maryhelen Wigle, all of Washington, D. C., Berthold J. Husting, U. S. Atty., and Elsmere J. Koelzer, Asst. U. S. Atty., both of Milwaukee, Wis., and A. F. Prescott and Lester L. Gibson, Sp. Assts. to the Atty. Gen., for appellant.

Douglas Van Dyke, of Milwaukee, Wis., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

The facts are involved. A complete statement appears in the careful opinion of the District Court. 46 F.Supp. 503. Also there set forth, in addition to the fact statement, is a complete and somewhat elaborate discussion of the issues and reasons for the conclusions reached. We refer to that opinion for a statement of the essential facts.

The controverted question for decision is the extent of the deduction from its taxable income that plaintiff may claim for the depletion of its iron mine for the years 1936–1939, inclusive.

In 1925, plaintiff made a contract with James Mining Company (hereinafter called James) whereby the latter was to operate plaintiff's iron mine in Northern Michigan. Plaintiff did not own the mine outright. As to seven-eighths of the land, it held a lease.

The agreement provided that James "will produce and ship from said premises and pay for * * * during each calendar year while this contract remains in force, at least 150,000 tons of iron ore and as much more as * * * could advantageously be used." James obligated itself to pay for the ore thereafter to be shipped, such an amount as was determined by a somewhat complicated basis, the details of which are not here important.

The agreement also provided for advance payments in case the minimum of 150,000 tons was not mined. As to such advance payments the agreement provided that "Advance payments were to be credited on James' obligation to pay for or in respect of iron ore mined and shipped in any subsequent year or years in excess of 150,000 tons minimum."

From 1925 to 1930, the amount James paid exceeded the minimum payment requirement of the lease. During the years 1931 to 1934 the amount of ore taken out fell off and the minimum payments made by James exceeded the amount due for the ore removed. James thereupon became entitled to a credit to be applied on ore later annually mined and shipped in excess of 150,000 tons.

During these years (1931 to 1934) appellee took depletion deductions at the rate fixed by the Commissioner ($.2609 per ton) for the ore actually mined. Plaintiff took no depletion deduction for ore later to be mined and shipped and for which it received advance minimum payment during those lean years. During said years plaintiff had no taxable income and its failure to claim depletion deductions on advance royalties provoked no issue or controversy. The question arose, however, in 1936 and continued for the next three years, during which time plaintiff claimed its deduction for depletion because of the removal of all the ore which was mined in those years.

The Commissioner contended (and so based his assessment) that plaintiff's 1936 to 1939 depletion deduction should be reduced by the amount of the minimum payments made by James in 1931 to 1934 and on which no depletion deduction had been claimed.

The contested issue is therefore narrowed to this—Did plaintiff lose its right to full depletion deduction for the years in question because of the advance payment under the James contract in the years, 1931 to 1934? In other words, was there a depletion deduction allowable in 1931 to 1934, growing out of the advance payment, so as to deprive plaintiff of depletion deduction in the subsequent years when the ore was actually mined and shipped?

Defendant argues that depletion was allowable and therefore deductible on advance minimum royalty payments (in 1931–1934) in excess of production and that de-

pletion should be taken in the year the minimum payments were received.

Both parties refer to Art. 23(m) (2) Regulations 94, but do not agree as to its application here.

Our conclusion is that the Revenue Act recognized a permissible deduction for depletion; that depletion of a mine ordinarily occurs when the ore is removed; that unless otherwise specifically provided by statute, the year wherein the depletion occurred is the proper year for the deduction. Plaintiff, having made no claim of deduction for the years 1931 to 1934, notwithstanding it received advance payments during those years in excess of the ore actually mined, should be allowed to make the deduction in the subsequent years.

Surely, plaintiff should be allowed a depletion deduction for the years 1936–1939. It has not had that deduction in full unless we can say it was entitled to a deduction in 1931–1934 for the physical depletion that actually took place in 1936–1939. It did not take the depletion in 1931–1934. True, it had no taxable income in those years which may account for its failure to assert a deduction. However, our question is whether it was entitled to a deduction in 1931–1934 to the extent that the advance payments exceeded the permissible depletion deduction for ore actually taken.

The advance payments made in 1931–1934 arising out of the James agreement to mine 150,000 tons annually, but which it failed to mine, did not affect the ore deposits in the mine and the deposits would have been there had James ended its contract before 1936.

A depletion deduction is allowable on the theory of a lessened amount of ore in the mine. It is the reduction of the ore body which justifies a deduction for depletion.

That reduction actually occurs in the year the ore is removed. It would seem out of harmony with the reason for a depletion deduction to require a reduction in years when no depletion occurred, because the parties in order to finance their extraneous business affairs provided for payments other than on the basis of actual amount of ore removed.

Nor can we engage in speculation as to whether any rule works to the advantage of the taxpayer or of the Government. We are unable to say, because of changes in tax laws, differences in tax rates due to the brackets into which the income falls, differences in value of the ore, whether the owner is benefited or hurt by the adoption of the rule we here accept.

The judgments are

Affirmed.