## ALPHONZO E. BELL CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10385.

Circuit Court of Appeals, Ninth Circuit.

Oct. 11, 1944.

Rehearing Denied Dec. 29, 1944.

Thomas R. Dempsey, Arthur H. Deibert, and William L. Kumler, all of Los Angeles, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and F. E. Youngman, Sp. Assts. to Atty. Gen., for respondent.

Haight, Trippet & Syvertson, of Los Angeles, Cal., for Bell View Oil Syndicate, amicus curiae.

Before WILBUR, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Taxpayer petitions to review a decision of the Board of Tax Appeals (now called the Tax Court) determining a deficiency in its income tax for the calendar year 1938.

Facts found by the Board and unchallenged by the parties are as follows. In 1938 petitioner, a California corporation, owned certain oil lands in Los Angeles County, herein termed the Bell property. The property was leased by Union Oil Co. of California, herein called Union, which agreed to pay petitioner a royalty of one-sixth of the production from the lands. Union was also lessee of certain adjoining oil property owned by a group of individuals, herein called the Alexanders, and of lands known as Bell A adjoining the Alexander property. A long, narrow plot just south of the Alexander tract was leased by the Bell View Oil Syndicate, herein termed the Syndicate. Six producing wells, known as Grohs Wells Nos. 1 to 6, inclusive, were located on the Syndicate property.

In 1935 petitioner brought an action in a California state court against the Syndicate and its trustees alleging that the producing areas of Grohs Wells Nos. 2 and 3 were under petitioner's property. Its third amended complaint charged in part that defendants had been wilfully and fraudulently extracting oil, gas, and other hydrocarbon substances from its property by means of such wells. The complaint prayed for an injunction restraining further extraction and compelling the plugging of the wells and for a judgment of almost $4,000,000 as well as the value of all oil and gas removed after January 1, 1936. Union joined in the action as a plaintiff, and the Alexanders intervened claiming like damages on the ground that the producing areas of the two wells were under their property.

A similar suit against the Syndicate was brought by Union in 1936 in connection with Grohs Wells Nos. 4, 5 and 6 seeking to have the three wells plugged and to recover the value of oil, gas, and other hydrocarbon substances produced by means of such wells from the Bell, Alexander, and Bell A properties. Union asserted that its damages were $450,000 per well. Petitioner and the Alexanders intervened claiming like relief and damages on the ground that the producing areas of the wells were under their respective properties.

In both California actions orders sustaining demurrers to the complaints without leave to amend were reversed on appeal. Bell Corp. v. Bell View Oil Syndicate, 24 Cal.App.2d 746, 747, 748, 76 P.2d 166, Id., 24 Cal.App.2d 587, 76 P.2d 167. Subsequently, the lower court ordered a survey of Grohs Wells Nos. 2 and 3 to determine the locations of the producing intervals or bottoms thereof. The surveys were made in April and May of 1938.

On July 8, 1938, petitioner, Union, and the Syndicate entered into an agreement compromising their various claims. Syndicate promised to pay petitioner and Union $450,000 and to plug Grohs Wells Nos. 2 and 3. Petitioner and Union released the Syndicate from all claims, known or unknown, arising out of the drilling or

operation of wells theretofore drilled with surface locations upon Syndicate property, promised to dismiss with prejudice complaints and complaints in intervention in the two California actions, and promised not to assert any claims as to the then existing subsurface locations of Grohs Wells Nos. 1, 4, 5 and 6, or to the future production of oil or gas therefrom, or to damages from their operation. Union promised to use its best efforts to obtain from the Alexanders a like release of claims and dismissal of actions with prejudice and in the meantime agreed to indemnify the Syndicate against loss from claims of the Alexanders on account of any trespassing wells theretofore drilled by the Syndicate upon, under, or through Alexander property.

A separate agreement was entered into by Union and the Alexanders on July 1, 1938. Under its terms Union was to pay the Alexanders $340,000, in consideration of which the Alexanders consented to dismiss a certain independent proceeding having no relation to the matters discussed herein and to assign to Union all their claims in the litigation pending against the Syndicate.

As between Union and petitioner a verbal agreement was reached, at the time Union became a party to the litigation against the Syndicate, to the effect that any recovery resulting from the litigation should be divided equally, in consideration of petitioner's prosecuting the action and Union's consenting to become a party plaintiff. In accordance with the terms of their understanding each took $225,000 of the $450,000 paid by the Syndicate. The Board specifically found that no certain part of the sum paid by the Syndicate was allocated to any particular matter in controversy and that the Syndicate would not have entered into any settlement agreement different from the one reached.

The suits pending against the Syndicate were dismissed without a trial on the merits.

At the hearing before the Board petitioner introduced into evidence the surveys of Grohs Wells Nos. 2 and 3 for the purpose of establishing that the producing intervals of those wells were located under the petitioner's property.

Petitioner contends here that the $225,000 received as a result of the compromise with the Syndicate was part of its gross income from its oil property and that therefore, in computing its income tax for 1938, it was entitled to deduct as a depletion allowance 27½ per cent of the amount, under the terms of §§ 23(m) and 114(b) (3) of the Revenue Act of 1938, 26 U.S. C.A.Int.Rev.Code, §§ 23(m), 114(b) (3).

A reasonable allowance for depletion in the case of oil and gas wells is permitted as a deduction from gross income by § 23 (m) of the Revenue Act of 1938, and reference is made to § 114(b), (3) and (4). The latter section provides in general for a depletion allowance in the case of oil and gas wells of 27½ per cent of "the gross income from the property during the taxable year."

That the $225,000 payment to petitioner was a part of its gross income for 1938 is not disputed. Neither is it disputed that a deduction for percentage depletion was proper if the amount represented compensation for oil and gas produced from petitioner's property, for the theory of the statutory deduction is: "It is permitted in recognition of the fact that the mineral deposits are wasting assets and is intended as compensation to the owner for the part used up in production. * * * The allowance is to the recipients of this gross income [from oil and gas] by reason of their capital investment in the oil or gas in place." Helvering v. Bankline Oil Co., 303 U.S. 362, 366f, 58 S.Ct. 616, 618, 82 L.Ed. 897. The question presented herein, as in the Board of Tax Appeals, is whether the compromise payment was actually income from oil property. The Board held against petitioner, and we agree with its conclusions.

In the instant case the taxpayer received a sum of money as its share of a lump sum payment made to compromise litigation involving several parties. The litigation dealt in part with trespass on taxpayer's property by reason of the illegal extraction of oil and gas therefrom; as a result the compromise might, in part at least, be considered compensation to taxpayer for such oil and gas. However, the settlement herein referred to numerous factors not directly related to the production of oil or gas from petitioner's property. The arrangements between the various interested parties show no dependence upon such production. Since the payment was made in a lump sum for all the benefits gained by the Syndicate, and since the payment was induced not by any one but a total of all the benefits, it is impos-

sible to allocate a specific consideration to each of the benefits. Therefore, it cannot be said that the entire sum or any definite part thereof received by petitioner represented oil and gas extracted from its property and that the amount was gross income subject to a deduction for depletion.

Petitioner relies upon Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410, to support his contentions. There the testatrix died leaving the bulk of her estate in trust for religious purposes. The heirs contested the will. Without a trial on the merits a settlement was accomplished whereby the heirs received a large portion of the residuary estate, and the will was admitted to probate. The applicable tax law exempted from taxable net income the value of property acquired by inheritance. Upon petition by one of the heirs the court held that the property received by him from the estate was acquired by inheritance, although distributed under the agreement settling the will contest, and was not taxable as income. The court reasoned, page 196 of 305 U.S., page 159 of 59 S.Ct., 83 L.Ed. 119, 119 A.L.R. 410: "There is no question that petitioner obtained that portion [of decedent's estate], upon the value of which he is sought to be taxed, because of his standing as an heir and of his claim in that capacity. It does not seem to be questioned that if the contest had been fought to a finish and petitioner had succeeded, the property which he would have received would have been exempt under the federal act. Nor is it questioned that if in any appropriate proceeding, instituted by him as heir, he had recovered judgment for a part of the estate, that part would have been acquired by inheritance within the meaning of the act. We think that the distinctions sought to be made between acquisition through such a judgment and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound, as it disregards the substance of the statutory exemption. It does so, because it disregards the heirship which underlay the compromise, the status which commanded that agreement and was recognized by it."

Applying the logic of the Lyeth case, supra, petitioner argues that if its action against the Syndicate had been pursued to a favorable judgment, its recovery would have represented payment for oil produced from its property and consequently gross income therefrom, and that its position as owner of the Bell property and as claimant for oil illegally extracted therefrom, a position supported by various surveys, underlay the compromise affected and was "the status which commanded that agreement and was recognized by it."

The basic theory of the Lyeth case, that a payment made under a compromise agreement and the claim compromised occupy the same status under the tax law, could be applicable only in a situation where the payment was restricted in purpose to the compensation of the original claim. White v. Thomas, 5 Cir., 116 F.2d 147. In the instant case petitioner's original claim was based on the Syndicate's alleged extraction of oil from petitioner's property. The facts show that the Syndicate's compromise payment released it from far more than that one claim.

In accordance with the terms of the settlement the Syndicate paid $450,000 to Union and petitioner together and plugged two oil wells. In return Union and petitioner dismissed their complaints in their trespass actions against the Syndicate. We make no comment as to the applicability of the Lyeth rule if no further facts complicated the instant situation; however, that the agreement herein went further nullifies any possible application of the rule. They promised not to assert any claims with respect to the present subsurface locations or to the future production or operation of Grohs Wells Nos. 1, 4, 5 and 6. Petitioner insists that such claims could be based only on the future illegal extraction of oil from its property, but we do not believe that whatever portion of the $450,000 applies to the release of future claims is a payment for oil to be removed; rather it is in the nature of a fee to free the Syndicate from the annoyance of subsequent litigation. In addition, they promised to release the Syndicate from claims, *unknown as well as known,* arising from the drilling or operation of the existing Syndicate wells. Therefore, part of the Syndicate's payment compensated the release of *unknown* claims which need not necessarily be for oil produced from petitioner's property.

The agreement mentions Grohs Well No. 1 in several of its terms. Money received to forbear from making any demand as to that well could not be payment for oil or gas illegally extracted from petitioner's property within the theory of the Lyeth

case, supra, since no claim was made anywhere in the California litigation as to Well No. 1.

Part of the $450,000 was transferred in consideration of Union's promise to try to obtain a release of the Alexander claims concerning the extraction of oil from their property and to indemnify the Syndicate against any loss by reason of such claims, a matter bearing no relation to the product of petitioner's land. The Syndicate payment settled the rights of others than petitioner, namely Union as lessee of the Alexander, Bell, and Bell A properties and, so far as any liability of the Syndicate was concerned, the Alexanders. Unquestionably, the compromise contemplated more than a reimbursement for oil taken from petitioner's property.

The equal division of the $450,000 as between Union and petitioner conflicted with their usual distribution of proceeds from oil since under their leasehold arrangements petitioner was entitled to one-sixth and Union to five-sixths of the profits from oil taken from the property. The disregard of ownership percentages may be explained by the Board's finding that the equal division was in consideration of the prosecution of the litigation by petitioner and the consent of Union to become a party. If the finding be true, and there is substantial evidence to support it, the Syndicate payment in part compensated Union for consenting and petitioner for prosecuting, both factors far removed from the value of oil extracted from petitioner's property. That, according to petitioner's brief, "it seeks depletion only on the portion of its recovery remaining after giving Union its full consideration for joining in the action" is immaterial under our view of the instant case since the Syndicate payment was not segregated with respect to the benefits achieved so as to show the sum applicable to each.

The disproportionate distribution is also indicative of the fact that Union and petitioner did not consider the Syndicate payment a normal division of oil proceeds but rather something completely different. Petitioner argues that: "If * * * Union was content to settle its claims for a nominal amount, even though out of proportion to the amount which was satisfactory to petitioner, that fact does not change the character of the sums which were received by the parties * * *." However, an understanding in advance of recovery to divide the proceeds in half is inconsistent with petitioner's theory; the parties might have realized the entire amount prayed for in their actions, in which case an equal division would have more than compensated petitioner for its expenses.

We conclude that the $225,000 paid to petitioner was not solely compensation for oil extracted from its property, was not "gross income from its property" within the meaning of §§ 23(m) and 114(b) (3) of the Revenue Act of 1938, and therefore was not subject to a deduction for depletion for federal income tax purposes.

Affirmed.