[Civ. No. 7294. Third Dist. Mar. 19, 1947.]

WILBUR E. TIMM et al., Respondents, v. CLARENCE L. BROWN, Appellant.

Charles L. Nichols, William R. Law and Thomas Maul for Appellant.

Henry S. Lyon and Gerald B. Wallace for Respondents.

THOMPSON, J.—Plaintiffs brought suit for unpaid rental due under the terms of a written lease to defendants of a mining claim in El Dorado County, together with damages for

failure to timber the mine as stipulated, and to quiet title in plaintiffs to the mine. The lease was coupled with an option to purchase the mining property, which option was not exercised. The defendant, Clarence L. Brown, as assignee of the lessees, took possession of the property. In the suit to quiet title it was alleged that defendants claimed some interest in the property. The court adopted findings favorable to plaintiffs on the issues of unpaid rent and ownership of the property. Damages for failure to timber the mine were disallowed. Judgment for unpaid rental in the aggregate sum of $1,800, which accrued from and after October 21, 1941, was rendered against the defendant, Brown, the assignee and tenant in possession, and title was quieted in plaintiffs. The lease was not terminated, nor were plaintiffs awarded possession of the premises. From that judgment the defendant, Brown, has appealed.

The appellant contends that the court erred in, (1) overruling a demurrer to the third amended complaint, for the chief reason that the complaint failed to allege that plaintiffs had fulfilled a covenant of the option to purchase the mining property which stipulated that they would ''clear the title'' to the mining property; (2) overruling appellant's objection to the introduction of evidence on the ground that the complaint failed to state a cause of action; (3) overruling objections to plaintiffs' attempt to prove an alleged oral agreement of appellant to pay the rent, which contract was made in March, 1941; and (4) denying appellant's motion for nonsuit. Appellant also complains that other ''irregularities of the proceedings'' occurred in the course of the trial.

The first count of the third amended complaint alleges that plaintiffs are the owners of the patented mining claim in El Dorado County, known as ''Atlanta Mine''; that on November 21, 1939, plaintiffs leased, in writing, the mine to the named defendants, other than Mr. Brown, for the rental of $300 per month, no part of which rental was paid after October 21, 1941; that the lease contained an option for lessees to purchase the mine for $250,000, upon specified terms contained in that instrument, which is attached to the complaint, marked Exhibit ''A'' and made a part thereof, including a down payment of $25,000 to be made on or before November 22, 1939, which was the day following the execution of the lease and option; that, on November 21, 1939, the lease was assigned by the original lessees to the defendant, Clarence L. Brown, as

authorized by the specific terms of the lease, which assignment is attached to the complaint, marked Exhibit "B" and made a part thereof; that the said Brown took immediate possession of the mining property and subsequently agreed to pay plaintiff said rental of $300 per month as stipulated, which payments he regularly made until October 21, 1941, after which date he failed to make further payments. It is also alleged that plaintiffs were damaged in the sum of $1,500 by appellant's failure to keep up and timber the mine as provided by the lease. But the last mentioned issue was determined against plaintiffs, and it is therefore immaterial on this appeal. In the second count of the complaint plaintiffs merely alleged facts constituting a simple suit to quiet title to the mining property.

The defendant, Brown, demurred to the complaint on the grounds that it fails to state a cause of action, and that certain allegations thereof are uncertain and ambiguous. The demurrer was overruled. The other defendants failed to appear in the action, and judgment was not rendered against them.

The defendant, Brown, answered the complaint, admitting the execution and assignment to him of the lease and option, and that he made no further payments of rent after October 21, 1941. He affirmatively alleged that on November 21, 1939, an agreement in writing for the organization of a corporation to be called Atlanta Gold Mining Company was executed, a copy of which is attached to the answer marked Exhibit "A" and made a part thereof, to consummate the purchase of the mining property and take title thereto, through a designated escrow holder.

That agreement was executed by Clarence L. Brown, through his attorney-in-fact, as party of the first part, by the original lessees as parties of the second part, and by plaintiffs as parties of the third part. The agreement does not indicate that plaintiffs were to become stockholders or that they should have any interest in the corporation. It was evidently signed by plaintiffs as a mere acquiescence in the defendants' proposal to exercise their option to buy the property and to hold title thereto in the name of the corporation according to the terms of that agreement. It provides for the issuance of 500,000 shares of capital stock of the par value of $1.00 each, and the sale of 100,000 shares for cash, subject to authorization therefor by the Corporation Commissioner of California

within a designated limited time, and for the delivery and payment to Brown of all proceeds from sales of all stock; that 50 per cent of all stock should go to Brown and the remaining 50 per cent of stock should be divided equally between the four original lessees. The agreement also provides that Brown would pay to the named escrow holder $25,000 in cash, on or before November 22, 1939, to which sum the original lessees had already contributed the sum of $5,000; that plaintiffs would pay to said escrow holder the sum of $10,000, for the evident purpose of defraying the cost of a clear title in the event of a purchase in the name of the corporation, for the agreement provides for execution and delivery to plaintiffs of the note of the corporation for said sum of $10,000. The agreement provides that in the event a minimum of 100,000 shares of the capital stock of the corporation are not sold for cash within five months from the time of issuance of the Corporation Commissioner's permit therefor, the assignment of the lease and option to the corporation would become void.

The appellant insists that the third amended complaint fails to state a cause of action and that the court therefore erred in overruling his demurrer to that pleading. We are of the opinion the complaint states valid causes of action for unpaid rental under the terms of the lease and to quiet title to the mining property, and that the demurrer was properly overruled. ██ It is contended that the complaint was defective for failure to affirmatively allege that plaintiffs had fulfilled the covenants of the lease on their part; that a separate agreement between the lessees and their assignee to organize a corporation and to sell capital stock thereof to finance their purchase of the property in the exercise of their option, which was acquiesced in by the plaintiffs, contained a covenant on the part of plaintiffs constituting a ''condition precedent'' to their right to maintain this action. That agreement had no application to the terms of the lease or the obligation to pay rent. It referred only to the organization of a corporation and the sale of stock, for the sole benefit of the lessees, as a means of exercising their option. If its provisions were necessary allegations of the complaint, that omission was cured by appellant's pleading them as defenses and making that instrument, as Exhibit ''A,'' a part of his answer. The provision of that separate agreement, upon which appellant relies, reads:

''It is hereby mutually agreed that said third parties [plaintiffs] will proceed diligently to clear the title to said Atlanta

Mine and if the same be not done, then and in that event said first party may do so at the cost and expense of the third parties.''

The foregoing quoted clause of the independent agreement does not constitute a condition precedent to the maintenance of an action on the lease for payment of stipulated rental or of a suit to quiet title. The obligation to pay rent was clearly fixed by the terms of the lease independently of the option to purchase the property. ■ But, if it was a necessary allegation of the complaint, it was waived and cured by appellant's pleading it as a defense, and by his attaching that instrument to his answer as an exhibit. (*Kreling* v. *Kreling*, 118 Cal. 413, 420 [50 P. 546]; 21 Cal.Jur. 277, § 194.) In the Kreling case, a demurrer on the grounds that the complaint failed to state facts sufficient to constitute a valid cause of action, and that plaintiff had not performed the covenants on her part, was overruled. The defendant answered, setting up the omitted agreement as a defense. The court said:

■ ''A defect in a complaint may be cured by the averments of the answer, even though a demurrer had been erroneously overruled; and we think the defect complained of here, if any such existed, had been thus cured.''

That separate agreement, as to the omission of which the appellant complains, does not contain a condition precedent to the right to maintain this suit for unpaid rental or to quiet title to the mining property. It is not claimed that the lessees or their assignee failed to exercise their option to buy the property, or that they failed to finance the proposed purchase by the sale of stock in the corporation, on account of any fault of plaintiffs. The corporation was organized, but it was unable to sell any stock whatever. That project was abandoned. The effort to buy the mine failed. The covenant on the part of plaintiffs, contained in the separate agreement with respect to the organization of the corporation, to ''proceed diligently to clear the title,'' applied only to the lessees and their assignee's option to buy the mining property, which was waived by their failure to exercise that option. The complaint was not defective on account of the omission of that separate agreement, or at all.

■ The court did not err in admitting evidence, over the objection of appellant, of the oral statement of Mr. Brown that he ''was going to live up to the terms of the lease, that he was going to continue with the payments.'' That state-

ment did not alter the provisions of the written lease. It constituted a mere acknowledgment of his liability to pay the stipulated rental as assignee of the lease. He had previously acknowledged in writing that he was so obligated by notifying plaintiffs that he was *sole lessee,* which was a recognition of the status of landlord and tenant between himself and the lessors. Moreover, he was actually in possession and had previously paid the rental in accordance with the terms of the lease. Even if that statement was incompetent, which we do not concede, it was harmless because it was merely cumulative. Nor do we find any error in other rulings or proceedings at the trial. It follows that the denial of a motion for nonsuit was also properly made.

The appellant, to whom the lease was immediately assigned, became liable for the stipulated rental of the mining property while he retained possession and control of the mine. The lease was assigned to him by the original lessees November 21, 1939, and he immediately took possession of the property and paid the stipulated rent for a period of nearly two years. The court so determined by its findings. That finding is supported by the evidence. February 7, 1941, appellant notified plaintiffs in writing that he was the sole lessee of the mining property, thereby accepting the terms of the lease and responsibility for payment of rent. Mr. Brown also orally accepted the terms of the lease and responsibility for payment of the rent. Mrs. Timm testified concerning that verbal agreement which was made to plaintiffs soon after February 18, 1941, that:

"Mr. Brown said he was going to live up to the terms of the lease, that he was going to continue with the payments, and that he was going to try to start an operation in the property, himself, that he was now in sole possession, and that he was going to operate it."

 The rule is well established that the assignment of a lease, in the absence of stipulations to the contrary, carries with it the obligations of the covenants contained therein, running with the land, and that an assignee of a lessee stands in lessee's shoes and becomes liable for payment of stipulated rent so long as the assignee remains in possession. (*Samuels* v. *Ottinger,* 169 Cal. 209 [146 P. 638, Ann.Cas. 1916E 830]; *Treff* v. *Gulko,* 214 Cal. 591, 599 [7 P.2d 697]; *Ellingson* v. *Walsh, O'Connor & Barneson,* 15 Cal.2d 673, 675 [104 P.2d 507]; *First National Bank* v. *Aldridge,* 33 Cal.App.2d 485,

490 [92 P.2d 674] ;15 Cal.Jur. 751, §§ 166-168; 32 Am.Jur. 320, § 374; 36 C.J. 373, §§ 1229-1230.)

The appellant contends that the lease does not contain a covenant to pay rent for the use of the mining property. He argues that the only payments which that instrument requires the lessees to make are designated as "royalties" which are to apply to the purchase price of the property under the option contained therein. We cannot agree with that construction of the language. The instrument is designated "Mining *Lease* and Option." ▮▮▮ No particular words are necessary to create a lease, provided the agreement shows the intention of the named lessor to dispossess himself and to grant the named lessee the right to enter and possess the designated premises in subordination to the lessor's title, for a fixed consideration and period of time. (15 Cal.Jur. 615, § 20.) Primarily, a lease creates the relationship of landlord and tenant. The lease which is involved in this case contemplated immediate possession of the mining claim by the lessees. It was at once assigned to the appellant, Brown, and he took possession and paid the stipulated monthly sums of $300 per month for nearly two years. The instrument does contain an option to buy the mine on specified terms, which was not exercised. But it also provides in great detail for the operation of the mine by the lessees, in consideration of "a royalty of ten per cent" of the net returns from the sales of quartz or minerals, "*as rental* for the use and occupancy of said property." It is true that the lease also provides that "All of such sums *so paid as rental*" may be applied on the purchase price of the mine in the event that the sale is consummated and plaintiffs are fully paid the *total* sum of $250,000, which was not done. The amount of $300 per month is fixed as a minimum payment of rent for each month. The lease provides that "the second parties shall pay to the first parties the sum of $300.00 per month, . . . commencing . . . in no event less than nine (9) months from the date hereof." Those payments are called "royalties," but that is immaterial. It is apparent that the parties understood the lessees were to pay *as rental* for the mining property not only 10 per cent of the net receipts from quartz and minerals derived therefrom, but also the additional sum of $300 per month beginning not later than August 21, 1940, which is nine months after the date of the lease.

In the case of *Samuels* v. *Ottinger, supra,* it is said:

"An obligation to pay rent, without an express agreement

to that end, arises from the mere occupancy, as tenant, of the premises.''

In the present case there was an express agreement of the lessees to pay that minimum sum of $300 per month as rental for the mining property while it was being operated. The appellant, Brown, assumed that liability by accepting the assignment of the lease and by taking and retaining possession of the property. Moreover, he acknowledged in writing by means of the letter previously mentioned, dated February 7, 1941, that he was holding the property as ''sole lessee.'' And he verbally agreed with plaintiffs that ''he was going to live up to the terms of the lease, that he was going to continue with the payments.'' In construing language constituting an ''express agreement'' to pay rent, it is said at page 212 of the last cited authority that:

''By 'express agreement,' in this connection, is meant not merely a promise, in exact words, to pay a given sum as rental; any language necessarily importing an undertaking on the part of the lessee to pay the rent will satisfy the requirement of the rule. For the distinction to which we have referred rests on the nature of the lessee's obligation. If that obligation arises solely from the fact that he occupies the premises as tenant, if, in other words it is based on the 'privity of estate' alone, the assignee who succeeds to that privity becomes the party to whom the landlord must look.''

The use of the word ''royalties'' in this case was intended to apply to stipulated rental which the lessees agreed to pay for the use of the property. In mining leases the terms of ''rent'' and ''royalty'' are frequently used interchangeably. (*Elsinore Oil Co.* v. *Signal Oil & Gas Co.*, 3 Cal.App.2d 570, 573 [40 P.2d 523].) In the case last cited it is said in that regard:

''It is apparent that the 'rentals' which were to be reduced upon quitclaiming the land were not the 'bonus' but the 'royalty,' for here, as in the case of a mining lease, *the amounts stipulated to be thus paid as royalties are not the purchase price* of the oil and gas in place *but are 'the compensation which the occupier pays the landlord for that species of occupation which the contract between them allows. . . .* In mining leases these words ''rent'' and ''royalty'' are used interchangeably to convey the same meaning.' '' (Italics added.)

For the foregoing reasons the judgment is affirmed.

Peek, J., and Adams, P. J., concurred.