**UNITED STATES STEEL CORPORA-
TION, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

No. 65 Civ. 3043.

United States District Court
S. D. New York.

May 19, 1967.

254

White & Case, New York City, for plaintiff; A. Chauncey Newlin, Haliburton Fales, 2d, William L. Hearne, Edmund W. Pavenstedt, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty. Southern District of New York, for defendant; Laurence Vogel, Samuel M. Eisenstat, Asst. U. S. Attys., of counsel.

## OPINION

LEVET, District Judge.

United States Steel Corporation, the above-entitled plaintiff, has moved under Rule 56 of the Federal Rules of Civil Procedure for summary judgment with respect to the claim for depletion deductions set forth in paragraphs 16, 17 and 18 of its complaint and, likewise, for an order pursuant to Rule 54(b) of the Federal Rules of Civil Procedure determining that there is no just reason for delay and that an express direction for entry of final judgment thereon be made.

The defendant, United States of America, has counter-moved for summary judgment in its favor on the claims asserted in the said paragraphs of the complaint.

The relevant claims in the complaint set forth in paragraphs 16, 17 and 18 are as follows:

### "Percentage Depletion

"16. In 1950, Plaintiff was lessor and lessee of iron ore mining properties in the State of Minnesota. Pursuant to the terms of the leases, for 1950 the lessee paid Minnesota ad valorem taxes with respect to the mining properties and Minnesota royalty taxes with respect to royalties paid by the lessee.

"17. In determining the Federal income tax for 1950 which Plaintiff has paid, for purposes of § 114(b) (4) and the determination of the depletion deduction allowable under § 23(m), the Minnesota ad valorem taxes and the Minnesota royalty taxes have been included in the lessor's 'gross income from the property,' and have been excluded from the lessee's 'gross income from the property.'

"18. These adjustments were erroneous, and by reason thereof, in determining the Federal income tax for 1950 which Plaintiff has paid, deductions for depletion have been allowed in the amount of at least $304,323.54 less than the amount which should have been allowed."

This is an action under Section 1346 (a) (1) of Title 28 United States Code to recover federal income tax for the year 1950 and assessed interest on additional payments of such tax, which plaintiff claims were erroneously and illegally assessed and collected.

### FACTS

During the year 1950, Oliver Iron Mining Company (hereinafter "Oliver"), a subsidiary corporation of the plaintiff, was lessee or successor lessee of certain iron ore mining properties in the State of Minnesota in that part of the state known as the Mesabi Range. (¶ 9, Joint Rule 9(g) Statement) All the leases of Oliver provided for the payment of royalties by the lessee and for the payment by the lessee of all taxes levied or assessed on the leased land, on the improvements and personal property thereon, and on the iron ore. (¶ 12, Joint Rule 9(g) Statement)

For the year 1950, Oliver, as lessee, paid to its lessors royalties, and paid to the Minnesota taxing authorities ad valorem taxes on the leased mineral, land and improvements. It also paid to the Minnesota taxing authorities the royalty taxes due with respect to the royalties paid by it, such royalty taxes being considered to be within the covenant of the lessee to pay the taxes levied upon the leased land and the iron ore.

For the year 1950, Oliver, as lessor, received royalties from its lessees, and Oliver's lessees paid to the taxing authorities ad valorem taxes on the leased mineral, land and improvements. Oliver's lessees also paid to the Minnesota taxing authorities the royalty taxes due with respect to the royalties received by Oliver under the Minnesota leases.

For 1950, the Internal Revenue Service, in those instances where Oliver was the lessee, reduced its percentage depletion deductions by excluding from "gross income from the property" the Minnesota ad valorem and royalty taxes paid by Oliver on the theory that such tax payments constituted the payment by Oliver to the lessor of additional "rents or royalties" within the meaning of the statute.[1]

The plaintiff paid to the District Director of Lower Manhattan, New York City, additional federal income taxes for 1950 with interest. (¶ 4, Joint Rule 9(g) Statement) The time for assessment against plaintiff of additional federal income tax for 1950 was extended to June 30, 1966 (¶ 5, Joint Rule 9(g)

---

1. Under those cases where Oliver was the lessor, the Internal Revenue Service correspondingly increased its depletion deductions on account of tax payments made by its lessees. The decreases exceeded the increases by $304,323.54, which resulted in an additional federal income tax of $179,926.08. This additional tax was paid together with interest of $153,528.71.

Statement) and ultimately, on June 29, 1965, plaintiff filed a claim for refund for the federal income tax paid for 1950 and interest on the same of $30,000,000 or such greater amount as may be legally refundable, with interest. (¶ 6, Joint Rule 9(g) Statement) This claim was rejected on August 24, 1965. (¶ 8, Joint Rule 9(g) Statement) The claim for an increased deduction for depletion was a part of this refund claim.

### ISSUE

The issue before this court on this motion for summary judgment involves the depletion deduction provided for by the Internal Revenue Code of 1939 and may be expressed as follows:

"Are ad valorem taxes and Minnesota royalty taxes, paid by a lessee under iron ore mining leases, includible in the 'gross income from the property' of the lessor, and excludable from the 'gross income from the property' of the lessee, in calculating the deduction for percentage depletion under Sections 23(m) and 114(b) (4) (A) of the Federal Internal Revenue Code of 1939?"

### RELEVANT STATUTES

The relevant statutes from the Internal Revenue Code of 1939 are as follows:

"Sec. 23. *Deductions from gross income*

"In computing net income there shall be allowed as deductions:

\*　　\*　　\*　　\*　　\*　　\*

"(m) *Depletion.*—In the case of mines \* \* \* a reasonable allowance for depletion \* \* \* according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary \* \* \*. In the case of leases the deductions shall be equitably apportioned between the lessor and lessee. \* \* \*

"(m) *Basis for depreciation and depletion.*—The basis upon which deple-

tion \* \* \* [are] to be allowed in respect of any property shall be as provided in section 114."

"Section 114. *Basis for Depreciation and Depletion.*

\*　　\*　　\*　　\*　　\*　　\*

"(b) *Basis for depletion*—

"(1) *General rule*—The basis upon which depletion is to be allowed in respect of any property shall be the adjusted basis provided in section 113(b) for the purpose of determining the gain upon the sale or other disposition of such property, except as provided in paragraphs (2), (3) and (4) of this subsection.

\*　　\*　　\*　　\*　　\*　　\*

"(4) *Percentage depletion for coal and metal mines and sulphur*—The allowance for depletion under section 23(m) \* \* \* shall be—in the case of metal mines, 15 per centum, \* \* \* of the gross income from the property during the taxable year, *excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property.* \* \* \*" (Emphasis added.)

The Treasury Regulations for the year in question provided:

"In all cases there shall be excluded in determining the 'gross income from property' an amount equal to any rents or royalties which were paid or incurred by the taxpayer in respect of the property and are not otherwise excluded from the 'gross income from the property.'" (Reg. 111 § 29.23 (m)–1(f))

The present Treasury Regulations, adopted in 1960, provide:

"In all cases there shall be excluded in determining the 'gross income from the property' an amount equal to any rents or royalties (*which are depletable income to the payee*) which are paid or incurred by the taxpayer in respect of the property and are not otherwise excluded from 'gross income from the property.'" (Emphasis added) (§ 1.613–2(c) (5) (i))

## THE CLAIM OF THE UNITED STATES

The United States contends that the language in the Internal Revenue Code of 1939 requires the United States Steel Corporation to deduct the Minnesota ad valorem and royalty taxes paid by it before computing its gross income from the property for percentage depletion purposes. Briefly, the defendant's contention is as follows: Plaintiff, as lessee under the lease here in question, was required, pursuant to the terms of the lease, to pay these taxes, although, in fact, as defendant claims, these were obligations of the lessor; that under the law of Minnesota and under the federal tax law these payments by the plaintiff constituted "rents and royalties" paid by the lessee for the benefit of the lessor and, therefore, were excludable from the lessee's base for depletion under Section 114(b) (4) of the Internal Revenue Code of 1939.

## THE CONTENTION OF THE PLAINTIFF

The plaintiff, on the other hand, contends that the Minnesota royalty and ad valorem taxes should not be excluded from the gross income from mining of the lessee in the computation of depletion deductions by the lessee.

## I.

## THE NATURE OF DEPLETION AND ITS ALLOWANCE

In general, the depletion deduction allowed under the Internal Revenue laws, in determining the taxable net income from mining, represents an allowance for the reduction in the content of the reserves from which the natural resource is extracted.

Beginning with the Revenue Act of 1913, the tax laws have recognized that depletion of natural resources occurs during the extraction process, and a deduction from taxable income was allowed to the owner or operator. In the particular instance of iron ore and other minerals, taxpayers have been permitted, since the Revenue Act of 1932, to take deductions for depletion, calculated on either costs or income from mining, whichever method results in a larger deduction. The deduction based on income from mining ("percentage depletion") is a percentage of the gross income, but not more than 50% of net. The percentage allowed depends on the mineral involved. (Section 114 of the 1939 Code, § 613 of the 1954 Code) Helvering v. Twin Bell Oil Syndicate, 293 U.S. 312, 55 S.Ct. 174, 79 L.Ed. 383 (1934) and Helvering v. Mountain Producers Corporation, 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907 (1938) summarize the history of percentage depletion.

In Helvering v. Mountain Producers Corp., supra, Chief Justice Hughes stated: "Congress has recognized that in fairness there should be compensation to the owner for the exhaustion of the mineral deposits in the course of production. United States v. Ludey, 274 U.S. 295, 302, [47 S.Ct. 608, 71 L.Ed. 1054]." (303 U.S. p. 381, 58 S.Ct. p. 625) See Paragon Jewel Coal Co. v. Commissioner of Internal Revenue, 380 U.S. 624, 85 S.Ct. 1207, 14 L.Ed.2d 116 (1965); Parsons v. Smith, 359 U.S. 215, 79 S.Ct. 656, 3 L.Ed.2d 747 (1959); Standard Lime and Cement Co. v. United States, 329 F.2d 939, 165 Ct.Cl. 180 (1964); United States v. Thomas, 329 F.2d 119 (9th Cir. 1964), cert. denied, 379 U.S. 819, 85 S.Ct. 39, 13 L.Ed.2d 31; Denise Coal Co. v. Commissioner of Internal Revenue, 271 F.2d 930 (3rd Cir. 1959).

One of the more recent statements of general principles relative to depletion allowances was made by Mr. Justice Clark in Paragon Jewel Coal Co. v. Commissioner of Internal Revenue, 380 U.S. 624, 626, 85 S.Ct. 1207, 1208 (1965), when he wrote:

"The parties agree that the principles of our opinion in 'Parsons v. Smith, 359 U.S. 215, 79 S.Ct. 656, 3 L.Ed.2d 747 (1959), are controlling here. There we held that the deduction is allowed in recognition of the fact that mineral deposits are wasting assets and that the deduction is intended as compensation to the owner

for the part used in production; that there may be more than one depletable interest in the same coal deposit, but that the right to an allocable portion of the allowance depends on the ownership of an economic interest in the coal in place since the statute makes the deduction available only to the owner of a capital interest in such deposit; and, finally, that the legal form of such capital interest is unimportant so long as it constitutes a right with regard to the coal in place."

The deduction for depletion for income tax purposes is permitted as an act of grace in recognition of the fact that mineral deposits are wasting assets and is intended as compensation to the owners for the part used up in production. Helvering v. Bankline Oil Co., 303 U.S. 362, 58 S.Ct. 616, 82 L.Ed. 897 (1938). See also Alphonso E. Bell Corporation v. Commissioner of Internal Revenue, 145 F.2d 157 (9th Cir. 1944); Kohinoor Coal Co. v. Commissioner of Internal Revenue, 171 F.2d 880 (3rd Cir. 1948), cert. denied, 337 U.S. 924, 69 S.Ct. 1168, 93 L.Ed. 1732 (1949); Sunray Oil Co. v. Commissioner of Internal Revenue, 147 F.2d 962 (10th Cir. 1945), cert. denied, 325 U.S. 861, 65 S.Ct. 1201, 89 L.Ed. 1982; Ryan v. Alexander, 118 F.2d 744 (10th Cir. 1941), cert. denied, 314 U.S. 622, 62 S.Ct. 72, 86 L.Ed. 500; Weirton Ice & Coal Supply Co. v. Commissioner of Internal Revenue, 231 F.2d 531 (4th Cir. 1956); cases under 26 U.S.C.A. § 611, note 4.

Only a taxpayer with an economic interest is entitled to the depletion. Kirby Petroleum Co. v. Commissioner of Internal Revenue, 326 U.S. 599, 603, 66 S.Ct. 409, 90 L.Ed. 343 (1946); Linehan v. Commissioner of Internal Revenue, 297 F.2d 276, 278 (1st Cir. 1961). The test of the right to depletion is whether the taxpayer has a capital investment in the oil in place (mineral) which is necessarily reduced as the oil (mineral) is extracted. See Anderson v. Helvering, 310 U.S. 404, 407, 60 S.Ct. 952, 84 L.Ed. 1277 (1940); Kirby Petro-

leum Co. v. Commissioner of Internal Revenue, supra.

The allowance for depletion is not made dependent upon the particular legal form of the taxpayer's interest in the property to be depleted. Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489 (1933); United States v. Thomas, 329 F.2d 119, 129 (9th Cir. 1964), cert. denied, 379 U.S. 819, 85 S.Ct. 39, 13 L.Ed.2d 31 (1964).

Although Section 611, which contains provisions similar to those in Section 23(m) of the 1939 Code, directs that a reasonable allowance for depletion shall be made in cases of mines and that "In the case of a lease, the deduction under this section shall be equitably apportioned between the lessor and lessee," this presupposes that deductions may be allowed in other cases and the section must be read in light of the requirement of apportionment of a single depletion allowance since two or more persons "cannot be entitled to depletion on the same income." Parsons v. Smith, 359 U.S. 215, 220, 79 S.Ct. 656, 661 (1959). *Both lessor and lessee may not have the same depletion allowance.* Denise Coal Company v. Commissioner of Internal Revenue, supra; Commissioner of Internal Revenue v. Southwest Exploration Co., 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347 (1956). A lessee cannot deduct depreciation on property into which none of his capital has gone or as to which he suffers no loss of invested capital. 47 C.J.S. Internal Revenue § 365, p. 541 and cases cited in note 98.

The "purpose of depletion allowance is not to recompense for the cost of manufacturing and marketing of the end product but is to allow for the exhaustion of the mineral assets. * * *" Standard Lime and Cement Co. v. United States, supra, 329 F.2d at 946.

## II.

### BURDEN OF PROOF

We start with the basic principle that Congress has the power to tax mine

owners without allowing deduction for actual depletion. Lucky Tiger-Combination Gold Mining Co. v. Crooks, 95 F.2d 885 (8th Cir. 1938).

It follows that the taxpayer's right to a claimed deduction from taxable income for depletion of mining property must be bottomed on a clear and unambiguous provision of the Revenue Acts or of regulations promulgated under them. Mineral Mining Co. v. United States, 46 F.Supp. 503 (E.D.Wis.1942), aff'd, 143 F.2d 51 (7th Cir. 1944); Quintana Petroleum v. Commissioner of Internal Revenue, 143 F.2d 588, 591 (5th Cir. 1944).

■ As in any deduction claimed, the Commissioner's determination of proper depletion allowances is prima facie correct, Emerald Oil Co. v. Commissioner of Internal Revenue, 72 F.2d 681 (10th Cir. 1934), and, consequently, the burden is on the taxpayer to prove the claimed deduction for depletion. Ryan v. Alexander, 118 F.2d 744 (10th Cir. 1941), cert. denied, 314 U.S. 622, 62 S.Ct. 72, 86 L.Ed. 500; Hurley v. United States, 10 F.Supp. 365 (D.Okl.1935).

## III.

## THE NATURE OF RENT AND ROYALTIES

"In economics, rent is the name given to the income which the owner of a productive instrument gets by using it himself or by exacting a payment from another user." 19 Enc. Britannica, 14th Ed., p. 155.

■ It seems to be universally agreed by the state courts that "rent" in its legal connotations is the compensation paid by a tenant for the use of land. Crowley v. Pott's Estate, 180 Minn. 234, 230 N.W. 645; Gasoff Realty Corp. v. Berger, 188 Misc. 622, 69 N.Y.S.2d 46; People ex rel. Hargrave v. Phillips, 394 Ill. 119, 67 N.E.2d 281; Automobile Supply Co. v. Scene-in-Action Corporation, 340 Ill. 196, 172 N.E. 35, 69 A.L.R. 1085; Whiting Paper Co. v. Holyoke Water Power Co., 276 Mass. 542, 177 N.E. 574; see 36A, Words & Phrases, "Rent."

The federal courts have made like rulings. United States v. Florea, 68 F.Supp. 367, 373 (D.Ore.1945); Kennedy v. Boston-Continental Nat. Bank, 11 F.Supp. 611, 618 (D.Mass.1935); In re Bonwit, Lennon & Co., 36 F.Supp. 97, 100, 101 (D.Md.1940).

■ Royalties payable by lessee under a mineral lease are rents. Hatch v. Morgan, 12 So.2d 476, 480 (La.App.); Timm v. Brown, 78 Cal.App.2d 609, 178 P.2d 10; State v. Royal Mineral Ass'n, 132 Minn. 232, 156 N.W. 128; Scott v. Hunt Oil Co., 152 So.2d 599, 602 (La.App.).

■ Royalties paid to the lessor are excluded from the gross income from production on which the lessee's depletion allowance is based because allowance or double depletion allowance would result. Sunray Oil Co. v. Commissioner of Internal Revenue, 147 F.2d 962, 965 (10th Cir. 1945), cert. denied, 325 U.S. 861, 65 S.Ct. 1201, 89 L.Ed. 1982.

■ Under the income tax laws, when the occupant of premises pays the owner's real estate taxes, the owner is held to be receiving "rent" to the amount of the taxes paid. Eastern Coal Corp. v. Yake, 67 F.Supp. 166 (N.D.W.Va.1946); Miles Corporation v. Lindel, 107 F.2d 729, 731 (8th Cir. 1939). The general principle involved is that if the taxpayer procures payment directly to his creditor of money due the taxpayer, he does not escape taxation merely because he did not actively receive the money. Helvering v. Horst, 311 U.S. 112, 116, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655 (1940). See also Commissioner of Internal Revenue v. Lester, 366 U.S. 299, 81 S.Ct. 1343, 6 L. Ed.2d 306 (1961); Commissioner of Internal Revenue v. Fender Sales Inc., 338 F.2d 924 (9th Cir. 1964); Shaw Construction Company v. Commissioner of Internal Revenue, 323 F.2d 316 (9th Cir. 1963).

■ "Royalty" has been defined as a payment reserved by the grantor of a patent, lease of a mine or similar right and payable proportionately to the use made of the right by the grantee. See

Raynolds v. Hanna, 55 F. 783, 800 (Cir. Ct., N.D.Ohio 1893); Black's Law Dictionary, Fourth Ed., "Royalty."

## IV.

## THE EFFECT OF THE STATUTES AND REGULATIONS

We may well note at the outset that there is no provision in either Section 23 or in Section 114 of the 1939 Code that the lessor and lessee are to determine the apportionment insofar as taxation is concerned. The 1954 Code, which, it is true, is not applicable here, is similar. "Leases.—In the case of a lease, the deduction under this section shall be equitably apportioned between the lessor and lessee." 26 U.S.C. § 611(b) (1).

But these provisions do not aid the plaintiff. The (rent and) royalties paid to the plaintiff's lessor are depletable income to the lessor, Kirby Petroleum Co. v. Commissioner of Internal Revenue, 326 U.S 599, 66 S.Ct. 409, 90 L.Ed. 343 (1946); Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489 (1933) and, hence, are excludable as to the plaintiff-lessee here.

The provisions of Sections 23 and 114 of the Revenue Code of 1939, relating to deduction from value of mining property for depletion in computing income, were to be read and considered together as parts of the whole. Commodore Mining Co. v. Commissioner of Internal Revenue, 111 F.2d 131 (10th Cir. 1940).

## V.

## TWIN BELL SYNDICATE and MOUNTAIN PRODUCERS CORP.

Plaintiff relies heavily on two cases: Helvering v. Twin Bell Oil Syndicate, 293 U.S. 312, 55 S.Ct. 174, 79 L.Ed. 383 (1934) and Helvering v. Mountain Producers Corp., 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907 (1938). (See oral argument by plaintiff, p. 9). These decisions, plaintiff asserts, stand for the proposition that "For percentage depletion purposes, gross income from mining should be divided between the lessor and the lessee in accordance with their agreement." (Plaintiff's Second Supplemental Brief, p. 1).

Plaintiff's counsel on oral argument phrased his argument, based on these cases, as follows: "We say that under the Supreme Court decisions you determine the thing on the basis of the agreement between the parties, and if the lessee agrees to make these payments, why, those things are considered to be charges to him and thereby he is not, in effect, to be paying additional amounts to the lessor." (SM 12, 13).

Apparently, plaintiff argues that Twin Bell held that "only royalties paid as such were to be taken into consideration as deductions from gross income in computing a lessee's base for depletion." From this, counsel appears to vault to a position that neither the ad valorem taxes nor the state taxes on royalties (under Minnesota statutes) are deductible. All that Twin Bell decided was, that royalties payable to the lessor were to be deducted before computing the percentage depletion allowance of the lessee.

An examination of these decisions demonstrates that neither supports the thesis for which contended. In The Twin Bell Oil Syndicate case, supra, the respondent, an assignee under an oil and gas lease, was obligated to pay royalties to the lessor. The Commissioner ruled that under Section 204(c) (2) of the Revenue Act of 1926 the deduction should be limited to 27½% of gross production less "royalties" paid. The Board of Tax Appeals sustained the ruling, 26 B. T.A. 172. The Circuit Court of Appeals reversed the Board, Twin Bell Oil Syndicate v. Helvering, 9 Cir., 70 F.2d 402. The United States Supreme Court reversed.

The Twin Bell lease, it is true, provided, among other things:

" * * * The Lessee is hereby authorized to pay all the taxes on said land and improvements and to deduct the Lessor's share thereof from the amount of royalties which shall fall due." (See Appeal Record, p. 91)

However, an examination of the decisional rulings reveals that no issue was raised at any time as to deductibility of any items equivalent to the Minnesota ad valorem tax or tax on royalties.

After discussing in Twin Bell some of the historical background of the problem, Mr. Justice Roberts wrote in part:

> "At all events, as the section must be read in the light of the requirements of apportionment of a single depletion allowance, we are unable to say that the Commissioner erred in holding that for the purpose of computation 'gross income from the property' meant gross income from production less the amounts which the taxpayer was obliged to pay as royalties. The apportionment gives respondent 27½ per cent. of the gross income from production which it had the right to retain and the assignor and lessor respectively 27½ per cent. of the royalties they receive. Such an apportionment has regard to the economic interest of each of the parties entitled to participate in the depletion allowance. Compare Palmer v. Bender, 287 U.S. 551, 558 [53 S.Ct. 225, 77 L.Ed. 489]." (293 U.S. p. 321, 55 S.Ct. p. 178)

When Twin Bell was decided by the Ninth Circuit (70 F.2d 402) headnote 4 was as follows:

> "Rentals and royalties, paid by assignee of oil lease, *held* part of its gross income, and hence not deductible therefrom in computing depletion allowance for purpose of determining its net taxable income (Revenue Act 1926, § 204(c) (1, 2), 213(a), 232, 233(a), 234(a) (1) (8), 26 U.S.C.A. §§ 935(c) (1, 2), 954(a), 984, 985(a), 986(a) (1) (8); Revenue Act 1932, § 114(b) (3), 26 U.S.C.A. § 3114(b)."

The United States Supreme Court reversed this decision and held that "royalties" were deductible—making no mention of "rents" or of "taxes" of the lessor payable to the lessee.

 Moreover, I find nothing in the present case to bind the Commissioner to

accept whatever the lessor and lessee have agreed as to apportionment. Obviously, the lease determines the obligations of the lessee to the lessor. However, as repeatedly stated in tax decisions, the issues must be determined by realities. United States v. Thomas, 329 F.2d 119 (9th Cir. 1964), cert. denied, 379 U.S. 819, 85 S.Ct. 39, 13 L.Ed.2d 31. It is the function of the Commissioner and not that of lessors and their lessees to determine apportionment in the first instance.

I fail to find any support for plaintiff in Twin Bell and I find nothing in Mountain Producers Corp. which is applicable to the issues of the present case.

## VI.

## MINNESOTA STATUTES AND THEIR EFFECTS

### THE MINNESOTA AD VALOREM PROPERTY TAX

The Minnesota law prescribes a tax on all real and personal property in the state. Minn.Stat. § 272.01. "The taxes assessed upon real property shall be a perpetual lien thereon * * *," see Minn.Stat. § 272.31, and if such taxes are not paid the property is sold to satisfy the tax lien. Minn.Stat. § 272.39.

 Under Minnesota law it is clear that the lessor, and not the lessee, is the owner of the property. State v. Evans, 99 Minn. 220, 108 N.W. 958 (1906). The Supreme Court of Minnesota has held that monies received under the conventional mining lease, such as that involved here, are rent rather than proceeds of the sale of the property. State ex rel. Inter-State Iron Co. v. Armson, 166 Minn. 230, 207 N.W. 727 (1926).

Moreover, the Minnesota Supreme Court, in a case involving the question as to whether or not the lessor could avoid the payment of the ad valorem property taxes on a theory that the lessee in effect paid all the ad valorem taxes due on the property when the lessee paid the gross earnings tax, held that the lessor was still liable for the ad valorem property tax. State v. Fawkes, 210 Minn. 587,

299 N.W. 666 (1941). In that case the court wrote in part:

" * * * The defendant [lessor] still has his property in the real estate here involved, and it earns him a substantial return. The express company [lessee] has only a leasehold interest in the property." 299 N.W. at 667.

This principle has also been upheld in interpreting federal law. See Von Baumbach v. Sargent Land Co., 242 U.S. 503, 517, 37 S.Ct. 201, 61 L.Ed. 460 (1917); Burt v. United States, 170 F.Supp. 953, 145 Ct.Cl. 282 (1959); Handelman v. United States, 357 F.2d 694 (Ct.Cl. 1966).

## MINNESOTA TAXES ON ROYALTIES

Minnesota statutes provide for a tax on all royalty received during each year for permission to explore, mine and remove ore. Minn.Stat. § 299.01.

Minnesota decisions have distinctly enunciated the principle that the royalty tax is a tax on the ore lands of the owner. Marble v. Oliver Mining Co., 172 Minn. 263, 215 N.W. 71 (1927). There, the Minnesota Supreme Court stated as follows:

" * * * We conclude the royalty tax to be a tax on the right, title, and interest in ore lands of the *owner* thereof who has granted another the right to mine the ore for a stipulated consideration, payable at certain times during a period of years.

" * * * In the absence of the covenant, the tax would, no doubt, have to be paid by the lessor to protect his title to the land. The intent of the lawmakers was to lay the burden of this tax upon the interest and estate of the one who granted permissions to mine. (Emphasis added) 215 N.W. at 71–72.

See also Lake Superior Consolidated Iron Mines v. Lord, 271 U.S. 577, 46 S.Ct. 627, 70 L.Ed. 1093 (1925); Burt v. United States, 170 F.Supp. 953, 145 Ct.Cl. 282 (1959).

The United States Court of Claims in 1959 decided that the payment of ad valorem taxes under a similar lease was a part of the royalty compensation to the lessor and that taxes on royalties of lessor, although paid by lessee pursuant to the terms of the lease, constituted additional rent to the lessor. Burt v. United States, supra.

The Tax Court followed the Burt case in Winifred E. Higgins, 33 T.C. 161 (1959). In that case, Higgins was a lessor of United States Steel Corporation. Judge Fisher wrote:

"The only issue presented is whether ad valorem real estate taxes paid by lessee, United States Steel Corporation, on an iron ore mine are includible in lessor's gross income for such years as additional rent or royalty and thus part of lessor's gross income from the property.

\* \* \* \* \*

"Both parties agree that Burt v. United States, 170 F.Supp. 953 [145 Ct.Cl. 282] (1959), decided adversely to the United States, is 'on all fours' with the instant case. Respondent would have us hold that the Court of Claims was in error. We have carefully reviewed Burt v. United States, supra, in the light of the arguments presented by respondent in the instant case. We agree with the reasoning of the Court of Claims in the Burt case, as well as the conclusion reached by that court. We, accordingly, sustain petitioner's position in the instant case." (p. 161)

In 1967, the Court of Claims adhered to the Burt decision in holding that payment of Minnesota ad valorem taxes paid by a lessee for a lessor constituted additional rent. Handelman v. United States, 357 F.2d 694 (Ct.Cl.1966). It is also interesting to note that present counsel for plaintiff filed briefs in both the Burt and Handelman cases for United States Steel Corporation as amicus curiae.

The Minnesota determinations are, therefore, not provincial in character but,

in fact, are approved by the federal courts.

■ I agree with the results reached in the above-mentioned cases. From these authorities and from the nature of the taxes I am forced to conclude that the plaintiff, in paying the ad valorem taxes and taxes on royalties was, in fact, defraying an obligation of the lessor and, hence, these taxes were a part of the rent or royalties and, consequently, deductible from the base for computation of depletion by lessee.

## VII.

## THE DEPLETABLE NATURE OF THE PAYMENTS

■ The nature of the royalty tax (Minn.Stat. § 299.01) is such that it is clear that it is directly related to production and, hence, is depletable income to the lessor. The plaintiff's argument that, in any event, the payment of ad valorem taxes by the lessee was not depletable income to the lessor must be rejected.

In both Burt v. United States, 170 F.Supp. 953, 145 Ct.Cl. 282 (1959), and Handelman v. United States, 357 F.2d 694 (Ct.Cl.1966), the government unsuccessfully put forth the argument that the lessor may not include in its base for depletion the ad valorem taxes paid by the lessee.

The Court of Claims in Handelman, in rejecting the argument that the ad valorem taxes were not dependent on production, wrote:

"The single purpose of the lease, of course, is for production of the ore, and the lessee would hardly subject himself to contractual liability for the ad valorem taxes without a very definite prospect of producing the ore. * * * It would be unreasonable to assume that the lessor would continue to get the benefits of these payments over a very long period of time in the absence of any prospect of production out of which the lessee could retrieve

his payment. * * * Little business acumen is needed to know that when it appears that further production will not be adequate to cover direct operating expenses and the ad valorem taxes, the lessee will terminate the lease and the obligation for the taxes will revert to the lessor. The conclusion is that the payment of these taxes is sufficiently related to production as to be dependent upon it." 357 F.2d at 703.

The plaintiff maintains that the ad valorem taxes are not directly related to production, since these taxes accrue with the passage of time. In considering the same point in Handelman, the court stated:

"In reply, the Government argues that while payment of the taxes may in fact come from production, there is a possibility that they will be paid when there is no production, and, therefore, payment is not dependent solely on production. Undoubtedly that possibility exists, but, as has been shown, it is inconsistent with economic reality. Without production, payment in most instances would be quickly curtailed." 357 F.2d at 703.

The court went on to say:

"There is no apparent reason why the ad valorem tax payments cannot be fragmented into annual units to determine whether each is production income or in the nature of a delay-rent. There is no present necessity for determining whether amounts to be received a half century from now will come from production or not. It will be known, when each annual tax report is filed, whether there was sufficient production to cover the payment of the taxes. It is agreed that simplicity in the application of the depletion provisions is desirable but, whenever possible, the court should avoid arriving at unrealistic results in the name of simplicity. The Government itself has chosen the 12-month year as the tax-paying unit. It should, in turn, allow the taxpayer to use a similar unit to determine if he has, in fact, suffered

any depletion of his resources." 357 F.2d at 703.

The plaintiff emphasizes that its mining leases have, on occasion, been surrendered without any production, and it cites nine examples. (Ex. F. to Joint Rule 9(g) Statement) Yet, the lease figures supplied by the plaintiff indicate that surrender of a lease without production is an unusual situation. (Compare Ex. F. to Joint Rule 9(g) Statement with letter from plaintiff's counsel attached to defendant's Reply Memorandum of Law) But surely our tax laws must be interpreted with a view to prevailing economic realities, not to unique situations.

I conclude that the ad valorem taxes paid by the lessee on behalf of the lessor were related to production and are includible by the lessor in its base for depletion.

## CONCLUSION

Thus, it is clear that the following principles apply here: (1) Depletion allowances are an act of grace; (2) The depletion allowance must be based upon statutes; (3) The burden is on the taxpayer to show that his depletion claim is within the statutory provision; (4) The determination of the Commissioner is prima facie correct; (5) Only a taxpayer with an economic interest is entitled to this depletion; (6) Both lessor and lessee may not have the same depletion allowance; (7) Minnesota ad valorem and state royalty taxes paid by the lessee for the lessor are rents and royalties which the lessor was obligated to pay and, hence, are deductible from the base of the lessee's depletion allowance.

Consequently, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted. No genuine issue as to any material facts exist and the defendant is entitled to judgment as a matter of law.

There is no just reason for delay and I direct that final judgment on this claim be entered.

Settle judgment on notice.